**UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| **THOMAS F. ABERNETHY., et al.** | ) | |
| | ) | |
| **Plaintiffs,** | ) | **No. 07-651L** |
| | ) | **Honorable Victor J. Wolski** |
| **v.** | ) | |
| | ) | |
| **THE UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS OR, ALTERNATIVELY, FOR SUMMARY JUDGMENT**

Martin E. Wolf
Kieron F. Quinn
Quinn, Gordon & Wolf, Chtd.
102 West Pennsylvania Avenue
Suite 402
Towson, MD 21204
(410) 825-2300
(410) 825-0066 fax
mwolf@quinnlaw.com
kfquinn@quinnlaw.com

Charles R. Hofheimer
Jack E. Ferrebee
Kristen D. Hofheimer
Hofheimer/Ferrebee, P.C.
1060 Laskin Road, Suite 12-B
Virginia Beach, Virginia 23451
(757) 425-5200
chofheimer@hoflaw.com
jferrebee@hoflaw.com
khofheimer@hoflaw.com

Thomas Shuttleworth
Stephen C. Swain
Charles Lustig
Shuttleworth, Ruloff, Swain, Haddad & Morecock
4525 South Boulevard, Suite 300
Virginia Beach, Virginia 23452
(757) 671-6000
tshuttleworth@srgslaw.com
scswain@srgslaw.com
clustig@srgslaw.com

*Attorneys for Plaintiffs*

# TABLE OF CONTENTS


Page(s)

BACKGROUND ....................................................................................................1

SUMMARY ..........................................................................................................3

STANDARD OF REVIEW ...................................................................................4

1. Motion to Dismiss ........................................................................................4

2. Motion for Summary Judgment .....................................................................5

ARGUMENT .......................................................................................................6

1. The Supreme Court's Decision in *American Pipe* ...........................................6

2. Application of American Pipe in the Federal Circuit and Court of Federal Claims .......................................................................8

3. The Plaintiffs are Members of the *Testwuide* Putative Class ..........................15

4. Defendant has Failed to Establish that Plaintiffs' Claims Should be Barred by the Doctrine of Laches ..................................................18

   A. The Circumstances of the Present Case do not Warrant Application of the Doctrine of Laches .......................................18

   B. Defendant Bears the Burden of Proof On its Affirmative Defenses ......................................................................19

   C. Defendant has Failed to Establish that Plaintiffs' Alleged Delay was Unreasonable and Inexcusable ................................21

   D. Defendant has Failed to Offer Any Evidence of, Let Alone, Establish Prejudice..........................................................22

CONCLUSION ....................................................................................................25

# TABLE OF AUTHORITIES

Page(s)

*A.C Aukerman Co. v. R.L. Chaides Constr. Co.*, 960 F.2d 1020 (Fed.Cir.1992) ..................18, 19, 23

*Advanced Cardiovascualr Sys., v. SciMed Life Sys., Inc.*, 988 F.2d 1157 (Fed.Cir. 1993)..........................................................................18

*American Pipe and Construction Co. v. Utah*, 414 U.S 538 (1974).....................................passim

*Anchor Estates, Inc. v. United States*, 9 Cl. Ct. 618 (1986)..................................................6

*Archuleta v. United States,* Case No. 99-205C .........................................................11

*Article II Gun Shop, Inc. v. Gonzales,* 441 F.3d 492 (7th Cir. 2006) ....................................21

*Athey v. United States,* 78 Fed.Cl.. 157 (2007)..........................................................3, 11, 25

*Bannum Inc. v. United States,* 59 Fed.Cl. 241 (2003) ..........................................................23

*Barbieri v. United States,* 15 Cl.Ct. 747 (1988)..................................................passim

*Barclay v. United States,* 351 F. Supp. 2d 1169 (D. Kan. 2004) ..........................................14

*Barlow v. U.S.,* 51 Fed.Cl. 380 (Fed.Cl 2002)..........................................................24

*Brunner v. United States*, ___ Fed. Cl. ___, 2006 WL1189492 (Fed. Cl.)(2006)................5

*Christian v. United States,* 46 Fed.Cl. 793 (2000)..................................................3, 10 11, 25

*Clearwater Constructors, Inc. v. United States*, ___ Fed. Cl.___, 2006 WL 1134478 (Fed. Cl.)(2006) ..........................................................................5

*Crown, Cork & Seal Co. v. Parker,* 462 U.S. 345 (1983) ....................................................8, 13

*CW Gov't Travel, Inc v. United States,* 61 Fed.Cl. 559 (2004) ...........................................18, 19

*Cygnus Corp. v. U.S.,* 63 Fed.Cl. 150, (Fed.Cl.2004) ..........................................................23

*Esposito v. United States*, ___ Fed. Cl. ___, 2006 WL 800757 (Fed. Cl.)(2006) ................5

Page(s)

*Eurell v. United States,* 215 Ct. Cl. 273 (1977) ....................20

*Forest Glen Properties, LLC v. United States*, ___ Fed.Cl.___,
2007 WL4527913 (Fed.Cl.)(December 20, 2007)....................4

*Gava v. United States,* 225 Ct.Cl.676 (1980) ....................21, 22

*Hoffman v. Applicators Sales & Serv., Inc.,* 439 F.3d 9 (1st Cir. 2006)....................21

*In re Enron Corporation Securities,* 465 F.Supp.2d 687 (S.D. Tex.2006)....................14

*Leinoff v. Louis Milona & Sons, Inc.,* 726 F.2d 734 (C.A.Fed.1984)....................20

*Loengard v. Santa Fe Industries, Inc.,* 573 F. Supp 1355 (S.D.N.Y. 1983)....................15

*Mississippi Dept. of Rehabilitation Services v. U.S.,* 61 Fed.Cl. 20 (Fed.Cl.2004)....................24

*North Hartland, LLC v. Unites States,* 78 Fed.Cl. 172 (2007) ....................4

*Official Committee of Asbestos Claimants of G-I Holding, Inc. v. Heyman,*
277 B.R. 20 (S.D.N.Y. 2002)....................14

*Palahnuk v. United States,* 70 Fed. Cl. 87 (2006)....................5

*Quinault Allottee Ass'n v. United States,* 197 Ct.Cl 134, 453 F.2d 1272 (1972) ....................10

*Solow v. United States,* 78 Fed. Cl. 86 (2007) ....................passim

*SRI International v. Matsushita Elec. Corp*., 775 F.2d 1107 (Fed. Cir. 1985)....................6

*Stone Container Corp. v. United States*, 229 F.3d 1345 (Fed. Cir. 2000) ....................passim

*Stuart v. General Motors Corp.,* 217 F.3d 621 (8th Cir. 2000) ....................21

*Studiengesellschaft Kohle v. Eastman Kodak Co.,* 616 F.2d 1315 (5th Cir. 1980) ....................20

*Testwuide et al. v. United States,* Case No. 01-201L....................passim

*United Enter. & Assocs. V. United States,* 70 Fed.Cl. 1 (2006) ....................18, 19

*United States v. King,* 395 U.S. 1, 89 S.Ct. 1501, 23 L.Ed.2d 52 (1969)....................10

*United States v. Raymond,* 92 U.S. 651, 23 L.Ed. 756 (1875)....................10

Page(s)

*Wood-Ivey Sys.Corp. v. United States,* 4. F.3d 961 (Fed. Cir. 1993) ....................................11, 12
14, 25

*Yuba Goldfields, Inc. v. United States,* 723 F. 2d 884 (Fed. Cir. 1983) ................................5

**UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| **THOMAS F. ABERNETHY., et al.** | ) | |
| | ) | |
| **Plaintiffs,** | ) | **No. 07-651L** |
| | ) | **Honorable Victor J. Wolski** |
| **v.** | ) | |
| | ) | |
| **THE UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS OR, ALTERNATIVELY, FOR SUMMARY JUDGMENT**

Plaintiffs, by and through their undersigned counsel, respectfully submit this Memorandum of Law in Opposition to Defendant's Motion to Dismiss or, alternatively, for Summary Judgment.[1]

**BACKGROUND**

The Government moves to dismiss the present case on the grounds that the Complaint was filed after the period of limitations expired. The motion sets forth an analysis that amounts to little more than adding six years to the alleged date of taking, July 1, 1999. This approach is neither valid nor helpful to the Court.

The Government's motion to dismiss completely ignores the core issue before the Court, namely, whether the statute of limitations as to the Plaintiffs' takings claims was tolled under the principles established in *American Pipe and Construction Co. v. Utah*, 414 U.S. 538 (1974). As the Court is well aware, a virtually identical case to the present case was filed in April 2001 as a

[1] The Government's motion, particularly as it pertains to the motion for summary judgment under RCFC 56, fails to satisfy the procedural requirements of this Court. RCFC 56(h), for example, requires that the moving party file a separate document titled Proposed Findings of Uncontroverted Fact. RCFC 56(e) requires that documents submitted in support of summary judgment be attached to an affidavit made on personal knowledge that authenticates and provides a foundation for admissibility. The Government's motion fails on both points.

putative class action, and remains pending before the court, namely *Testwuide et al. v. United States*, Case No. 01-201 L.[2] The class certification issue in *Testwuide* was pending from the filing of the Complaint on April 5, 2001, until denial of class certification on June 17, 2003. Under the Supreme Court's decision in *American Pipe*, the period of limitations is tolled for all members of the putative class in *Testwuide* for this period of two years, two months and 12 days.

This very issue, tolling limitations under *American Pipe*, was raised and briefed in *Testwuide.* In June and July 2004, after the Court denied class certification and lifted the stay, the Court conducted a series of telephonic status conferences, at which the Government raised limitations as a possible defense to the individual cases that Plaintiffs' Counsel were filing, the cases that were ultimately consolidated with *Testwuide.* (Wolf Affidavit, ¶ 6). As a result, the Court ordered the parties to submit bench memoranda on the application of *American Pipe* tolling as result of the class action complaint in *Testwuide*. (Wolf Affidavit, ¶ 6) The bench briefs were filed on September 9, 2004, and contained an extensive discussion about *American Pipe* and its application to the putative *Testwuide* class. (Wolf Affidavit, ¶ 7).

Despite that fact that the parties in *Testwuide* submitted briefing to this Court as to their positions on the applicability of the tolling principles established in *American Pipe,* Defendant's request for dismissal contains no discussion of statutory tolling. This may be an attempt to deprive Plaintiffs of an opportunity to respond to the Government's position on *American Pipe*. Plaintiffs are left in the unfortunate position of either assuming arguments that the Government hasn't made, or running the risk of leaving the arguments unrebutted. In either case, the pending

[2] *Testwuide* began in 2001 as a single case. Subsequently, in 2004, seven additional cases were filed and consolidated into *Testwuide*. *See* Testwuide Docket Entries attached as Exhibit 1 to the Affidavit of Martin E. Wolf; Doc. #109. The cases consolidated with *Testwuide* are: *Burlage, et al. v. United States*, No. 04-120 L; *Adams, et al. v. United States*, No. 04-279 L; *Anderson, et al. v. United States*, No. 04-333 L; *Beagle, et al. v. United States*, No. 04-1176 L; *Aralar, et al. v. United States*, No. 04-1280 L; *Whitley, et al. v. United States*, No. 04-1331 L; *Price, et al. v. United States*, No. 04-1718 L.

motions do not meaningfully advance resolution of the issue that the Court must face, namely, the application of *American Pipe* tolling to the claims before it.

**SUMMARY**

Tolling the statute of limitations for putative class members during the pendency of the decision on class certification has been the uniform law in federal courts applying Rule 23 of the Federal Rules of Civil Procedure since 1974 with the decision of the Supreme Court in *American Pipe*. This Court has applied *American Pipe* tolling unequivocally to class action suits in an unbroken line of cases: *Barbieri v. United States*, 15 Cl.Ct. 747 (1988); *Christian v. United States*, 46 Fed.Cl. 793 (2000); *Solow v. United States*, 78 Fed. Cl. 86 (2007); *Athey v. United States*, 78 Fed.Cl. 157 (2007). In all these cases, the Court specifically relied on *American Pipe* as the basis for tolling limitations against the Government. Indeed, in these cases, the Court refutes the arguments that the Government made in its bench memorandum filed in *Testwuide*. Moreover, the Federal Circuit, in an appeal from the Court of International Trade, specifically upheld *American Pipe* tolling in a class action against the United States. *See, Stone Container Corp. v. United States*, 229 F.3d 1345, 1354 (Fed. Cir. 2000).

It is also clear that the Plaintiffs in the present case were members of the putative class in *Testwuide*, and thus, are entitled to the benefit of *American Pipe* tolling. (Wolf Affidavit, ¶¶ 10-13). Given the well-entrenched precedent of applying *American Pipe* tolling in this Court and the undeniable fact that the Plaintiffs are members of the *Testwuide* putative class, there is no doubt that *American Pipe* tolling applies in the present case.

In the alternative, the Government requests summary judgment on the basis of laches, despite the fact that the period of limitations (including the period tolled) has not expired. The Government has failed to meet its burden, as the party seeking summary judgment, to establish

that there are no genuine issues of material fact, and that the Government is entitled to judgment as a matter of law. Specifically, the Government has offered no evidence that the alleged delay by any particular Plaintiff was unreasonable and inexcusable. Neither has the Government offered any evidence that the alleged delay (even assuming it might be considered unreasonable and inexcusable) resulted in economic or evidentiary prejudice to the Government. On this basis alone, the Government's motion must be denied. Moreover, it clear from this Court's prior decisions in similar cases that the actions of the Plaintiffs in waiting to file until the *Testwuide* case settled is reasonable. Finally, the Government cannot demonstrate prejudice because the *Testwuide* case, which involved the exact same documents and testimony as the present case, was two days from trial when the tentative settlement was reached. Accordingly, the laches motion must fail.

## STANDARD OF REVIEW

### 1.

### Motion to Dismiss

In deciding a motion to dismiss for lack of subject-matter jurisdiction, the Court must accept as true the facts alleged in the Complaint. *North Hartland, LLC v. United States*, 78 Fed.Cl. 172, 176 (2007). Moreover, the Court must draw all reasonable inferences in favor of the plaintiff. *Id*. at 177. Where the jurisdictional facts are challenged, however, the Court is not limited to the facts alleged in the Complaint, but must allow the plaintiff an opportunity to present all available evidence supporting his jurisdictional allegations. *Forest Glen Properties, LLC v. United States*, ___ Fed.Cl. ___, 2007 WL4527913 (Fed.Cl.)(December 20, 2007) at pp. 7-8. Consideration of outside evidence does not convert a motion under RCFC 12(b)(1) to a motion for summary judgment, as would be required for a motion under RCFC 12(b)(6). *Id*.

Although there are no formal procedures for determining jurisdictional facts, a Court may properly use the summary judgment procedures and allow the non-moving party to submit all available evidence to support its jurisdictional allegations. *Id.* Ultimately, the party invoking the Court's jurisdiction bears the burden of establishing jurisdiction by a preponderance of evidence. *Id*. at p. 9.

**2.**

**Motion for Summary Judgment**

A party is entitled to summary judgment when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." RCFC 56(c); *Palahnuk v. United States*, 70 Fed. Cl. 87, 90 (2006). The party moving for summary judgment bears the burden of demonstrating that there is an absence of a genuine dispute of material fact, and that he is entitled to judgment as a matter of law. *Esposito v. United States*, ___ Fed. Cl. ___, 2006 WL 800757 (Fed. Cl.) at p. 3 (2006). To demonstrate a genuine dispute of material fact, the nonmoving party need not present evidence in a form that would be admissible at trial. The moving party, however, must file with the Court the documentary evidence that supports his assertion that the material facts are beyond reasonable dispute. *Brunner v. United States*, ___ Fed. Cl. ___, 2006 WL 1189492 (Fed. Cl.) at p. 4 (2006). In analyzing a motion for summary judgment, the Court must interpret the facts and inferences in favor of the non-moving party. *Brunner* at p. 4; *Clearwater Constructors, Inc. v. United States*, ___ Fed. Cl. ___, 2006 WL 1134478 (Fed. Cl.) at p. 4 (2006).

Inverse condemnation cases, by their nature, are extremely fact intensive and militate against disposition by summary judgment. *Yuba Goldfields, Inc. v. United States*, 723 F.2d 884,

887 (Fed. Cir. 1983); *Anchor Estates, Inc. v. United States*, 9 Cl. Ct. 618, 621 (1986). This sensitivity is heightened when the bulk of evidence supporting summary judgment is testimony from an expert witness. *Anchor Estates* at 622. It is particularly inappropriate to foreclose a party's opportunity to cross-examine key expert witnesses. Moreover, this Court has also expressed its concern about foregoing its own opportunity to question expert witnesses in order to understand highly technical testimony in a fact-intensive case. *id*. As the Court of Appeals cautions in similar cases, "experience has shown that a trial often establishes facts and inferences not gleanable from papers submitted pre-trial." *SRI International v. Matsushita Elec. Corp*., 775 F.2d 1107, 1116 (Fed. Cir. 1985).

## ARGUMENT

### 1.

### The Supreme Court's Decision in *American Pipe*

Eleven days before the expiration of the applicable limitations period, the State of Utah filed a class action complaint against American Pipe and others, alleging violations of Section 1 of the Sherman Act. The court did not certify the class, finding that it failed to satisfy the requirement of Fed.R.Civ.P. 23(a)(1), that the members of the class are so numerous that joinder is impracticable. Eight days after the order denying class certification was entered, 60 towns, municipalities and water districts that would have been members of the putative class moved to intervene as plaintiffs in the case. The motions to intervene were denied by the District Court on grounds that the limitations period had run as to all the intervenors and had not been tolled during the pendency of the decision on class certification. 414 U.S. at 542-544.

The Ninth Circuit reversed:

> Finding that ***'as to members of the class Utah purported to represent, and whose claims it tendered to the court, suit was***

> ***actually commenced by Utah's filing,'*** the appellate court concluded that '(i)f the order (denying class action status), through legal fiction, is to project itself backward in time it must fictionally carry backward with it the class members to whom it was directed, and the rights they presently possessed. It cannot leave them temporally stranded in the present.'

414 U.S. at 544-545, *citing Utah v. American Pipe and Const. Co.*, 473 F.2d 580, 584 (9th Cir. 1973)(emphasis supplied).

The Supreme Court affirmed the Ninth Circuit because of the representative nature of a class action lawsuit, holding that "the filing of a timely class action complaint commences the action for all members of the class as subsequently determined." 414 U.S. at 550. This holding was found to be most consistent with the purpose of allowing class actions in the first place:

> ***A contrary rule*** allowing participation only by those potential members of the class who had earlier filed motions to intervene in the suit ***would deprive Rule 23 class actions of the efficiency and economy of litigation which is a principal purpose of the procedure. Potential class members would be induced to file protective motions to intervene or to join in the event that a class was later found unsuitable.*** In cases such as this one, where the determination to disallow the class action was made upon considerations that may vary with such subtle factors as experience with prior similar litigation or the current status of a court's docket, a rule requiring successful anticipation of the determination of the viability of the class would breed needless duplication of motions. ***We are convinced that the rule most consistent with federal class action procedure must be that the commencement of a class action suspends the applicable statute of limitations as to all asserted members of the class who would have been parties had the suit been permitted to continue as a class action.***

414 U.S. at 553-554 (emphasis supplied). Moreover, the Supreme Court found no prohibition in tolling a limitation period that is part of the substantive cause of action, pointing to numerous examples in which federal courts tolled statutes of limitations that were part of the substantive right to sue. 414 U.S. at 557-559. The proper test, the Court clarified, is whether tolling the statute is "consonant with the legislative scheme." 414 U.S. at 558.

**2.**

**Application of *American Pipe* in the Federal Circuit and Court of Federal Claims**

In the thirty years since *American Pipe* was decided, tolling has been extended well beyond the limited factual circumstances in the *American Pipe* case. *See generally*, 5 *Newberg on Class Actions 4th Ed.* §16.11 *et seq*. (West 2002) and cases cited therein; *Crown, Cork & Seal Co. v. Parker*, 462 U.S. 345 (1983). In *Barbieri v. United States*, 15 Cl.Ct. 747, 751 (1988), this Court adopted *American Pipe* tolling to cases filed as class actions under RCFC 23, holding that the limitations period is tolled "whenever the facts demonstrate a reasonable and good faith basis for believing that the litigation satisfies the prerequisites for class treatment specified in FRCP 23." *Id*.[3] There, customs agents, working in Key West during the Mariel Boat Lift in 1980, claimed entitlement to additional compensation because they served as boarding officers on the refugee boats. The complaint was filed as a putative class action on behalf of similarly situated agents. Class certification was denied after the six-year period of limitations would have expired for absent members of the putative class. Shortly after the denial of class certification, 13 agents, who would have been members of the class had it been certified, filed a complaint in this Court. 15 Cl.Ct. at 748-749.

The Court first reviewed the holding in *American Pipe* and noted the differences between Fed.R.Civ.P. 23 and RCFC 23, particularly, that RCFC 23 was applied almost exclusively to

[3] There can be no doubt that *Testwuide* was based on facts that demonstrated a reasonable and good-faith belief that the case satisfied RCFC 23 for class treatment. Judge Bush found the issue of class certification such a close call that she took the extraordinary step of certifying the question for interlocutory appeal *sua sponte* as part of her order denying class certification. In that certification, she stated: "Further, there is substantial ground for difference of opinion on the issue of class certification. * * * The Federal Circuit may deem it appropriate to . . . apply existing precedent in such a manner as to render plaintiffs' proposed method of class certification viable." (Wolf Affidavit, Exh. 4, pp. 20-21). Indeed, the Western District of Tennessee certified a class in an inverse condemnation case alleging the taking of an avigation easement, identifying the class solely on the noise contour map for the airport. (Wolf Affidavit, ¶ 7).

"opt-in" classes. 15 Cl.Ct. at 749-750. The Court then responded to three arguments raised by the United States against applying *American Pipe* tolling.

First, the Government argued that the differences in the class action rules militated against applying *American Pipe* tolling in this Court. According to the Government's argument, the fact that RCFC 23 provided for only an opt-in class (unlike Fed.R.Civ.P. 23) meant that a class action filed in this Court was not a "truly representative suit," only an invitation to joinder, and limitations could not be tolled until a person joined the action, thus identifying himself as a putative class member. 15 Cl.Ct. at 750. After acknowledging that a few courts in the pre-*American Pipe* period followed this line, the Court adopted what had been the majority position pre-*American Pipe* that the statute of limitations was tolled for all class members when the complaint was filed, regardless of when their identity was established. *Id*. The Court adopted this position for two reasons: (1) procedural fairness based on this Court's commitment to be consistent with the Federal Rules of Civil Procedure, and (2) historical precedent in federal courts pre-dating modern class actions to allow representative suits by individuals for unnamed class members, for whom limitations was tolled. 15 Cl.Ct. at 751.

The Government's second argument was that *American Pipe* was limited to the specific situation in which class certification was denied for failure to demonstrate that members of the class were so numerous to make joinder impracticable. This Court rejected that argument noting that such a limitation would force potential class members to file protective motions to intervene, thus destroying the utility of the class action mechanism. Moreover, the Court noted that courts regularly applied *American Pipe* tolling well beyond the facts presented in *American Pipe* itself. Instead, the Court adopted the principle that the filing of a class action complaint tolled the period of limitations for all class members "whenever the facts demonstrate a reasonable and

good faith basis for believing that the litigation satisfies the prerequisites for class treatment specified in FRCP 23." *Id*.

The Government's third argument was that the statute of limitations applicable to this Court is a limitation on the waiver of sovereign immunity, which must be strictly construed. While agreeing with the principle, the Court held that applying *American Pipe* tolling did not involve "the court's power to 'liberalize' the statute of limitations," rather it was an exercise of the Court's authority to avoid "multiple suits through a representative action." 15 Cl.Ct. at 752.

> And that is a question that was long ago settled in the court's favor. *Western Cherokee Indians v. United States*, 27 Ct.Cl. 1, 54 (1891); *aff'd sub nom. United States v. Old Settlers*, 148 U.S. 427, 479-80, 13 S.Ct. 650, 671-672, 37 L.Ed. 509 (1893); *Quinault Allottee Ass'n v. United States*, 197 Ct.Cl. 134, 137-138, 453 F.2d 1272, 1274 (1972).

*Id.* The Court continued:

> "[t]he directive that waiver of sovereign immunity not be read expansively (e.g. *United States v. King*, 395 U.S. 1, 4, 5 [89 S.Ct. 1501, 1502, 1503, 23 L.Ed.2d 52] (1969)] goes to the relief we can award, the subjects we can consider, and the timing of claims, not the intermediate procedural steps we take in cases plainly within our jurisdiction. Long ago, the Supreme Court said that in hearing and determining the causes that come before this court for adjudication 'we see no reason why it [the Court of Claims] may not use such machinery as courts of more general jurisdiction are accustomed to employ under similar circumstances to aid in their investigations.' *United States v. Raymond*, 92 U.S. 651, 654, 23 L.Ed. 756 (1875)." [internal citation omitted] ***It being clear, therefore, that the court has the power to entertain class actions, we think it follows, from the representative nature of such a suit, that its commencement tolls the running of the statute of limitations for all purported members of the class.***

15 Cl. Ct. at 752, *quoting Quinault*, 197 Ct. Cl. at 138 (emphasis supplied).

The continuing validity of this holding in *Barbieri* was affirmed in *Christian v. United States*, 46 Fed.Cl. 793, 818 (2000), and most recently in, *Solow v. United States*, 78 Fed.Cl. 86

(2007), and Athey v. United States, 78 Fed.Cl. 157 (2007). Both cases involved plaintiffs who had been part of the putative class in an earlier-filed case (*Archuleta v. United States*, Case No. 99-205C) that was settled for a smaller class that excluded the plaintiffs in *Solow* and *Athey*. In both *Solow* and *Athey* (decided two days apart), the Court relies on the decisions and analyses in *Barbieri* and *Christian* in reaffirming the applicability of *American Pipe* tolling against the Government in this Court. *Solow*, 78 at 89 ("The Court further concludes that the *Archuleta* suit tolled the statute of limitations for the Plaintiffs based on the principle announced in *American Pipe*." Also applied equitable tolling on separate grounds.); *Athey*, 78 at 160 ("It is clear to the Court that like *Barbieri* and *Christian*, the VA Plaintiffs' claims were tolled in 1999 when the *Archuleta* suit was filed.").

Two decisions from the Federal Circuit tolling limitations against the United States are most helpful in demonstrating the validity of this Court's prior decisions, namely, *Wood-Ivey Sys. Corp. v. United States*, 4 F.3d 961 (Fed. Cir. 1993), and *Stone Container Corp. v. United States*, 229 F.3d 1345 (Fed. Cir. 2000). In *Wood-Ivey*, the Federal Circuit held that RCFC 6(a) applies to the computation of the time for filing a complaint when the statutory filing period ends on a Saturday, Sunday or Holiday. 4 F.3d at 964. There, the plaintiff filed a complaint on Monday, the first business day after the day on which the six-year period of limitation would expire. The case was dismissed by this Court as untimely, and that dismissal was vacated on appeal. 4 F.3d at 964. In reaching its decision, the Federal Circuit relied on a long line of federal precedent (including decisions of the Claims Court), holding that application of the federal rules to time for filing in cases against the government does not extend the courts' jurisdiction or have anything to do with sovereign immunity. *Id.* at n. 4 ("Our decision does not

turn on either jurisdiction or sovereign immunity, and does not reach equitable tolling.").[4] Moreover, the fact that the RCFC are not submitted to Congress for ratification in no way diminishes the vitality and application of the Rules. 4 F.3d at 963-964.

The decision in *Wood-Ivey* is important to this Court for two reasons: (1) it establishes binding precedent to the effect that application of the RCFC in a way that extends statutory time limitations does not affect the Court's jurisdiction, or involve issues of sovereign immunity or equitable tolling, and (2) provides a foundation for the Federal Circuit's decision in *Stone Container*, applying this precedent to class actions against the United States. In *Stone Container*, several corporations sued in the Court of International Trade ("CIT") to recover the Harbor Maintenance Tax paid to the Government. The United States defended on the grounds that the complaints were filed outside the two-year statute of limitations for making claims for such refunds. The case was designated as a test case by the CIT to test the applicable limitation period for a number of similar suits that had been filed. The CIT held, and the Federal Circuit affirmed, that the limitations period was tolled by a previously filed class action until the decision denying class certification was entered. 229 F.3d at 1347.

The Federal Circuit first acknowledged that a statute of limitations is a condition on the waiver of sovereign immunity and courts should not interpret a statute of limitations in a manner that extends the waiver of sovereign immunity beyond the intent of Congress. 229 F.3d at 1352. The Federal Circuit then acknowledged the less-than-clear Supreme Court precedent as to equitable tolling against the Government, and its own struggles to reconcile that Supreme Court precedent when applying it to various statutes of limitations. 229 F.3d at 1352-1354. The

[4] The Federal Circuit noted that the dissenters listed an "unbroken line of decisions" that involved issues of sovereign immunity, jurisdiction and equitable tolling, none of which were involved in *Wood-Ivey* or the present case before the Court. Plaintiffs' Counsel are familiar with these decisions and the language used in the opinions, which at first blush sounds helpful to the Government's position. These cases, which may appear in the United States' reply memorandum, simply do not address the situation before the Court, namely interpretation of the RCFC to include *Am Pipe* tolling in class actions.

Federal Circuit then distinguished class actions, holding that *American Pipe* tolling was not an application of judge-made equitable tolling at all, rather it was an exercise of statutory tolling pursuant to Rule 23:

> A somewhat different situation applies under Rule 23 for class actions. In *American Pipe & Construction Co. v. Utah*, 414 U.S. 538, 554, 94 S.Ct. 756, 38 L.Ed.2d 713 (1974), the Supreme Court held that "the commencement of a class action suspends the applicable statute of limitations as to all asserted members of the class who would have been parties had the suit been permitted to continue as a class action." The rule of *American Pipe* appeared to apply only to purported members of the class who made timely motions to intervene after the trial court denied class certification. However, in *Crown, Cork & Seal Co. v. Parker*, 462 U.S. 345, 103 S.Ct. 2392, 76 L.Ed.2d 628 (1983), the Supreme Court extended the tolling rule of *American Pipe* to all members of the asserted class, including those who subsequently filed their own suits. *Id*. at 353-54, 103 S.Ct. 2392.
>
> ***American Pipe and Crown, Cork & Seal were not based on judge-made equitable tolling, but rather on the Court's interpretation of Rule 23. In American Pipe, the Court explained that "[u]nder present Rule 23, . . . the filing of a timely class action complaint commences the action for all members of the class as subsequently determined.*** *American Pipe*, 414 U.S. at 550, 94 S.Ct. 756. The Court then held that the class action suspended the statute of limitations for all asserted class members because the contrary approach "would frustrate the principal function of a class suit" by forcing putative class members to file suit to protect their rights. *Id*. at 551, 94 S.Ct. 756.

229 F.3d at 1354 (emphasis supplied). The Federal Circuit then compared Fed.R.Civ.P. 23 to Rule 23 of the CIT and held that there was no reason to distinguish the two for *American Pipe* tolling purposes. Finally, the Federal Circuit concluded:

> Having determined that Rule 23 tolling is statutory rather than equitable, it follows that the rule of *American Pipe* applies to the government just as it does to private parties, both generally and in this particular case.

*Id.*

RCFC 23, like Rule 23 of the CIT, has the force of law (see discussion regarding the RCFC in *Wood-Ivey, infra*) and shares the fundamental purpose of Fed.R.Civ.P. 23, that is, "the efficiency and economy of litigation . . . ." *American Pipe*, 414 U.S. at 554. *American Pipe* tolling applies to class actions filed in this Court against the United States as a matter of statutory tolling. *Stone Container*, 229 F.3d at 1354. Accordingly, because it is statutory, rather than equitable tolling, the limitations associated with equitable tolling are inapplicable, *i.e*. jurisdictional limitations. *Id*; *See also Official Committee of Asbestos Claimants of G-I Holding, Inc. v. Heyman,* 277 B.R. 20, 31-32 (S.D.N.Y. 2002); *In re Enron Corporation Securities*, 465 F.Supp.2d 687, 717 (S.D. Tex. 2006).

In the bench brief filed in *Testwuide*, the Government's principal argument was that the policy considerations underlying *American Pipe* tolling – protecting the rights of absent class members whose claims would expire while a class action suit was pending -- were not present because class members had one year and a half left on the initial period of limitations from the denial of the class certification motion to file their own claims. Plaintiffs anticipate the Government may raise this argument in its reply brief.

Not only did the Government fail to cite any authority in support of this argument, but this exact argument has been rejected by at least one district court. In *Barclay v. United States*, 351 F.Supp. 2d 1169, 1177 (D. Kan. 2004), the district court rejected this argument stating that "[n]othing in the decision itself [*American Pipe*] suggests such a limitation, and the Government's argument appears contrary to the Supreme Court's unqualified pronouncement that the filing of a class action 'suspends' the applicable statute of limitations." *Id.* The court further reasoned that "[s]uch a rule might also create incentives for potential class members to

prepare and file separate actions as the end of the original limitations period approaches, something that is clearly at odds with the purpose of the tolling rule." *Id*.

At least one district court has applied *American Pipe* tolling in situations where a significant amount of time remained in the initial period of limitations. In *Loengard v. Santa Fe Industries, Inc.*, 573 F.Supp 1355, 1360-61 (S.D.N.Y. 1983), the district court applied *American Pipe* tolling to the Plaintiff's claims where thirteen months remained on the original statute of limitations after class certification was denied.

**3.**

**The Plaintiffs are Members of the *Testwuide* Putative Class**

It is clear that *American Pipe* tolling is entrenched precedent in this Court and is applicable in cases against the Government generally. In order to get the benefit of the principle in the present case, the Court only needs to be satisfied that the Plaintiffs are members of the *Testwuide* putative class, and that the Complaint was filed within the tolled period of limitations. Both conditions are satisfied.

The *Testwuide* Complaint included two classes based on the subject properties' ownership and noise exposure:

> Class 1 – 80 + dB DNL
>
> Owners of all residential properties as of July, 1998, located in a noise zone of 80 or more dB DNL in the 1999 Noise Contours for NAS Oceana or NALF Fentress and in a noise zone of at least 5 dB DNL lower in the 1997 Noise Contours, both as established by Wyle Laboratories, Inc. in Report 97-10 dated February, 1998.
>
> Class 2 – 65-79 dB DNL
>
> Owners of all residential properties as of July, 1998, located in a noise zone of 65-79 dB DNL in the 1999 Noise Contours for NAS Oceana or NALF Fentress and in a noise zone of at least 5 dB DNL lower in the 1997 Noise Contours, both as established by Wyle Laboratories, Inc. in Report 97-10 dated February, 1998.

(Wolf Affidavit, ¶ 4). Any property that is covered by these definitions are members of the putative class in the present case.

Beginning in October 2006, the local Virginia Beach newspaper, *The Virginian Pilot*, publicized the tentative settlement of *Testwuide*. This was followed by several more periods of publicity as progress toward final settlement continued, culminating in July 2007 when the first settlement checks were distributed to property owners in *Testwuide*. With each round of publicity, property owners who were not plaintiffs in the consolidated *Testwuide* case contacted Plaintiffs' counsel seeking representation to pursue their own claims. This culminated in July 2007 when literally thousands of property owners telephoned the offices of Plaintiffs' counsel and even appeared in person at their offices. (Wolf Affidavit, ¶ 9).

Plaintiffs' counsel began reviewing the claims of property owners who had contacted them. As part of this process, counsel investigated whether the property owners were part of the putative class in *Testwuide*, in which case limitations would have been tolled during the period from filing the Complaint in *Testwuide*, until the motion for class certification was denied. In both *Testwuide* and the present case, Plaintiffs allege that the date of taking was as early as July 1, 1999. Class certification was pending in *Testwuide* from April 5, 2001 until June 17, 2003. This period of two years, two months and 12 days, when added to the end of the six-year limitations period, extended the end of the limitations period to September 11, 2007. (Wolf Affidavit, ¶ 10).

Plaintiffs' counsel could only review a fraction of the thousands of property owners who sought to pursue their claims within the period remaining in which to file the complaints. Plaintiffs' counsel had to turn away literally thousands of property owners as the September 11, 2007 deadline approached. (Wolf Affidavit, ¶ 11).

For each of the 1,375 properties whose owner's claims have been filed in the present case, counsel retained an expert in Geographical Information Systems (GIS) to assist in determining the noise exposure based on the 1997 and 1999 Noise Contours, both as established by Wyle Laboratories, Inc. in Report 97-10 dated February, 1998. (Wolf Affidavit, ¶ 12). Plaintiffs' counsel first determined from the land records of Virginia Beach or Chesapeake, as the case may be, if the person owned the subject property as of the date of taking, July 1, 1999. The information for those who did own their properties as of the date of taking was sent in batches to the GIS expert. He used the property information obtained from the cities of Virginia Beach and Chesapeake, overlayed with the noise contour data produced by the United States in discovery during *Testwuide*, to determine the noise exposure for each property as shown in the 1997 and 1999 noise contours. Of the 1,375 properties for whom counsel has filed suit, the noise exposure for 1,301 was readily identified. The remaining properties required further research. Usually, this involved obtaining a more accurate street address or correcting transposed numbers or misspelled street names. For a very small number, Plaintiffs counsel located the property on a street map and visually compared the location to the AICUZ map published by the Department of the Navy. The end result is that each of the 1,375 properties was determined to be in a noise contour of 65 dB DNL or above for the 1999 contour, and to have been in a noise contour of at least 5 dB DNL less for the 1997 contour. This means that each of the 1,375 properties for whom suit has been filed in the present case was included in the *Testwuide* class definition and was a putative class member in *Testwuide*.

Accordingly, *American Pipe* tolling applies to the claims in the present case. The period of limitations, with tolling, expired not earlier than September 11, 2007. The Complaint in the present case was filed on September 5, 2007. Thus, the motion to dismiss must be denied.

**4.**

**Defendant has Failed to Establish that Plaintiffs' Claims Should be Barred by the Doctrine of Laches.**

In the alternative, the Government moves for summary judgment with respect to its affirmative defense that Plaintiffs' claims should be barred by the doctrine of laches. To successfully invoke laches, the Government must demonstrate that there is no genuine issue of material fact: (1) that the delay from the time the Plaintiffs knew or reasonably should have known of their claims against the Government was unreasonable and inexcusable; and (2) that the delay caused either economic prejudice or injury to the Government's ability to mount a defense. *A.C. Aukerman Co. v. R.L. Chaides Constr. Co.,* 960 F.2d 1020, 1032 (Fed.Cir.1992) (en banc); *accord Cornetta,* 851 F.2d at 1377-78 (stating the proponent of a laches defense has the burden of proving both elements, and the failure to do so will prevent the application of laches.).

**A.**

**The Circumstances of the Present Case Do not Warrant Application of the Doctrine of Laches**

In this case, a successful invocation of the Government's laches defense would result in shortening the statutory deadline.[5] Therefore, the Government's request should be treated with a high level of skepticism because "absent extraordinary circumstances," *United Enter. & Assocs. V. United States,* 70 Fed.Cl. 1, 21 (2006) (quoting *CW Gov't Travel, Inc. v. United States,* 61 Fed.Cl. 559, 569 (2004)), "the Court of Federal Claims refuses to invoke the doctrine of laches to dismiss claims whose limitation period has been set by statute and has not run." *Advanced*

[5] The Government's motion expressly invokes the laches argument as an alternative to the motion to dismiss grounded on the statute of limitations. If the Court dismisses the Complaint based on limitations, there is no need to address laches. If the Court denies the motion to dismiss on limitations, it must necessarily determine that the Complaint was filed within the period of limitations, presumably including the tolling period based on *Testwuide*. The Government's laches defense, therefore, can only be considered as attempting to shorten the otherwise appropriate period of limitations.

*Cardiovascular Sys., Inc. v. SciMed Life Sys., Inc.,* 988 F.2d 1157, 1161 (Fed.Cir.1993); *United Enter., supra,* 70 Fed.Cl. at 22 (holding that defendant had not established the extraordinary circumstances necessary to warrant the reading of a shorter statute of limitations into the Tucker Act). Where, as here, Congress has not limited the time in which a claim for inverse condemnation "may be brought beyond the general six-year statute of limitations applicable to Tucker Act suits, the court 'is reluctant to invoke laches except under extraordinary circumstances.'" *United Enter., supra,* 70 Fed.Cl. at 22 (quoting *CW Gov't Travel,* 61 Fed.Cl. at 569).

In the present case, Plaintiffs brought suit following the settlement of the *Testwuide* litigation, which was within the six-year period as set forth in the Tucker Act, including the period in which limitations was tolled by the pendency of the motion for class certification in *Testwuide*. The Government has offered no explanation, evidence or even mentioned any circumstances that are extraordinary, special or in any way warranting shortening the period of limitations. Accordingly, the doctrine of laches does not apply. *United Enter* 70 Fed.Cl. at 22.

**B.**

**Defendant Bears the Burden of Proof on its Affirmative Defense.**

Even if the Government could show extraordinary circumstances – which they have not, can not, and should not be allowed to try in rebuttal – the Government has failed completely to demonstrate the elements of laches, namely that (1) the delay from the time the Plaintiffs knew or reasonably should have known of their claims against the Government was unreasonable and inexcusable; and (2) the delay caused either economic prejudice or injury to the Government's ability to mount a defense. *A.C. Aukerman,* 960 F.2d at 1032. Because it cannot establish extraordinary circumstances, the Government relies upon a series of patent and military back-pay

cases in an attempt to shift the burden of proof to Plaintiffs by alleging that there is a rebuttable presumption of laches when a party delays the filing of suit by more than six years. Of course, the application of laches to a patent infringement case, where there is no statute of limitations, or a military back-pay case, where the Government has been required to hire a replacement worker, present entirely different situations than the situation here.[6]

Notably, the Federal Circuit has rejected the application of any rebuttable presumption of laches. In *Cornetta v. United States,* 851 F.2d 1372, 1378 (Fed.Cir. 1988), the Court rejected the assertion that, "the government can rely on a presumption of prejudice, or shift the burden to plaintiff to show lack of prejudice if delay is long, to support the affirmative defense of laches." *Id.* Finally, the Court concluded that "[w]e see no reason why the burden of proving the absence of prejudice should be visited on the plaintiff through the device of a presumption." *Id.* at 1380.

The reasoning behind the application of a presumption in patent cases and the since-rejected application of a presumption in military pay cases is both factually and legally distinct from the circumstances in this matter. Because the Government has failed to address any of these differences, this Court should decline to apply a rebuttable presumption of laches in this matter.

---

[6] In a patent case, "the only statutory time limitation on a patent infringement action is set forth in 35 U.S.C. § 286, which provides that one cannot recover damages for any infringement committed more than 6 years before the filing of a complaint. This limitation only restricts the extent one can recover *pre-filing* damages. It places no other limitation on the filing of an infringement action during a patent's 17-year term." *Leinoff v. Louis Milona & Sons, Inc.*, 726 F.2d 734, 741-42 (C.A.Fed.1984). Thus, courts use the equitable doctrine of laches as there is no statute from which to determine the timeliness of an infringement action, vis-à-vis the patentee's first knowledge of infringement. *Id*. The 6-year language cited to by Defendant in support of its laches defense is exclusive to patent cases. *Studiengesellschaft Kohle v. Eastman Kodak Co.,* 616 F.2d 1315 (5th Cir. 1980) (stating that the 6-year limitation in section 286, means that a 6-year delay is presumptively an unreasonable one for filing a patent infringement suit). Most importantly, "[l]aches, if proven, does not preclude a patent infringement action. It has, for example, no effect on an action for *post-filing* damages or an injunction. It simply bars the recovery of *all pre-filing* damages." *Leinoff v. Louis Milona & Sons, Inc.*, 726 F.2d 734, 741-42 (C.A.Fed.1984).

Defendant also relies upon a military back-pay case, *Eurell v. United States*, 215 Ct. Cl. 273 (Ct. Cl. 1977), in support of its assertion that because of the length of the alleged delay in filing suit, the United States has a lesser burden of proving prejudice. Prior to its reversal, the military back-pay cases relied upon the notion that the Government was always prejudiced because if it lost a back-pay case, it had to pay the salary of two people, but only get the effort of one.

### C.

### Defendant has Failed to Establish that Plaintiffs' Alleged Delay was Unreasonable and Inexcusable.

Although delay by the plaintiff is the first element needed to establish a defense of laches, contrary to the position taken by the Government, it is not enough to show merely a lapse of time from the date a cause of action first accrued. *Cornetta,* 851 F.2d at 1377. To satisfy the first element of laches, the Government must prove that the delay was both unreasonable and inexcusable. *Id.* at 1378; *see also Gava v. United States,* 225 Ct.Cl. 676, 679 n.2 (1980).

The Government compares the date of the filing of Plaintiffs' Complaint (September 5, 2007), in relation to the date of the alleged taking (July 1, 1999) and the Navy's first Environmental Impact Studies Hearings (1997) in an attempt to show that the alleged delay was unreasonable and inexcusable. This meager attempt falls far short of satisfying the first element of a laches defense.

The only "evidence" offered by the Government is support of unreasonable and inexcusable delay is a collection of various documents such as, website pages, brochures, newspaper articles, etc. that purportedly show that the issue of jet noise was discussed in parts of the community at-large for a period of time, and that some people within the community decided to file suit sooner than the Plaintiffs in this case. First, these documents are not supported by affidavit or any other authenticating testimony that would allow them to be considered in support of summary judgment. RCFC 56 requires that documents submitted in support of summary judgment must be attached to an affidavit made on personal knowledge that both identifies and authenticates the document. *See Article II Gun Shop, Inc. v. Gonzales*, 441 F.3d 492, 496 (7th Cir. 2006); *Hoffman v. Applicators Sales & Serv., Inc.*, 439 F.3d 9, 15 (1st Cir. 2006); *Stuart v. General Motors Corp.*, 217 F.3d 621, 635 n. 20 (8th Cir. 2000), all interpreting the identical

provisions under Fed.R.Civ.P. 56(e). The Government has failed entirely to satisfy this obligation and the Court should disregard the meager "evidence" offered by the Government. Second, even if the Court considers these documents, they are not dated, there is no testimony as to the level of dissemination, or any other specific information that would impute knowledge to the Plaintiffs currently before the Court. The Government offers no evidence that the Plaintiffs have computers or internet access that would have allowed them to view any website, or that they ever in fact viewed the websites to which the Government refers. In *Testwuide*, the estimated number of people living in the high noise zones after the arrival of the jets was more than 92,000 (Wolf Affidavit, Exh. 3, Memorandum at p. 25), yet only about 3,400 ever filed suit prior to the present case. The "evidence," such as it is, shows that, at the time *Testwuide* and the consolidated cases were filed, only about 3% of the affected population knew of their claims. Anything beyond that is speculation. Indeed, there is no evidence that the Plaintiffs in the present case (except for Mr. Askins in the related case) knew or should have known they had claims at an earlier date, or when that theoretical earlier date may be. Without some information showing that the delay was unreasonable or inexcusable, the Government cannot satisfy the first element of a defense of laches. *Cornetta*, 851 F.2d at 1372; *Gava*, 225 Ct. Cl. at 679 n. 2.

**D.**

**Defendant has Failed to Offer Any Evidence of, Let Alone, Establish Prejudice.**

As described above, the Federal Circuit has soundly "reject[ed] the notion that the [G]overnment can rely on a presumption of prejudice, or shift the burden to plaintiff to show lack of prejudice if [the] delay is long, to support the affirmative defense of laches" in non-patent cases. *Cornetta,* 851 F.2d at 1378. "If the [G]overnment invokes the affirmative defense of laches, it has the burden to show that it was prejudiced by a claimant's tardiness in filing suit."

*Id.* at 1380. Courts have reasoned that shifting the burden would "undercut the very equity which laches serves, by eliminating the prejudice element and its corresponding burden of proof." *Id.*

"Where no prejudice to the defendant has ensued from the mere passage of time, there should be no bar to relief." *Id.* at 1378. A defendant can establish two types of prejudice: economic and evidentiary. Economic prejudice focuses on the financial consequences to defendant, and possibly others, which could have been prevented by an earlier filing, should the plaintiff be successful in its claim. *A.C. Aukerman Co. v. R.L. Chaides Const. Co.* , 960 F.2d 1020, 1033 (Fed. Cir. 1992) (en banc). Evidentiary prejudice is the hardship encountered in mounting a defense due to plaintiff's delay and may include unavailable witnesses, the loss or destruction of evidence, or faded memories. *Cornetta,* 851 F.2d at 1378. Evidentiary prejudice may not only handicap the defendant's ability to make its case, but it also "undermin[es] the court's ability to judge the facts." *Aukerman,* 960 F.2d at 1033.

The Government has understandably failed to offer any specific evidence that the delay has resulted in either economic or evidentiary prejudice. Rather, in wholly conclusory fashion, the Government repeatedly asserts that it has been prejudiced by the delay.[7] This Court must determine that failure to offer any evidence of prejudice is fatal to the Government's request for summary judgment. *Cygnus Corp. v. U.S.*, 63 Fed.Cl. 150, 154-55 (Fed.Cl. 2004) (holding that the because the Government had failed to identify any evidence in support of its motion for summary judgment with respect to the affirmative defense of laches, a summary disposition of the issue was inappropriate). *See generally Bannum, Inc. v. United States,* 59 Fed.Cl. 241, 243-

[7]The Government's sole references to prejudice in its brief are excerpted: 1) "Plaintiffs inexplicable decision to sit on their claims for more than eight years has prejudiced Defendant" at 11; 2) "Thus it is clear that plaintiffs' delay in bringing their claims . . . was unreasonable and has prejudiced Defendant" at 13; and 3) "In sum, even putting aside the statute of limitations, Plaintiffs' claims should be barred by the doctrine of laches, considering the prejudice Defendant has suffered …. " at 14.

44 (2003) (discussing the two-part, burden-shifting procedural scheme for addressing summary judgment).

In *Solow*, this Court found that unsupported assertions of prejudice were insufficient to establish the prejudice requirement of the laches defense.[8] There, the Government claimed evidentiary prejudice based upon an assertion that it would be difficult to locate personnel who would be able to offer credible testimony as to the amount of the lump sum payment to plaintiffs and there was a question as to whether the necessary records were still available. *Id*. at 89. The Court rejected the Government's claims and found that because all the records were still available in electronic format and locating witnesses to testify was unnecessary, the Government had failed to establish that it had suffered any economic prejudice from the delay. *Id*. at 90. *See also Mississippi Dept. of Rehabilitation Services v. U.S.*, 61 Fed.Cl. 20, 31 (Fed.Cl. 2004) (rejecting the Government's laches defense based upon unsupported assertions of economic prejudice).

In *Solow*, the Government, by at least pointing to some tangential proof of evidentiary prejudice, made a stronger showing than it has here. Yet, the Court still found no prejudice.

Here, the Government has failed to offer even a single piece of evidence in support of its assertion of prejudice. Nor could it. As demonstrated by the attached record of *Testwuide*, all such evidence has been meticulously preserved and safeguarded. *Testwuide* was two days from trial when the tentative settlement was reached on October 17, 2006. At that point in the process, an administrative record of the decision to transfer the jets to Oceana had been compiled and preserved as part of prior case under the National Environmental Protection Act (NEPA),

---

[8] The prejudice aspect of the defense is not easily established. In *Barlow v. U.S.*, 51 Fed.Cl. 380, 393 (Fed. Cl. 2002), this Court found that the Government had failed to establish defense prejudice despite the fact that because of the alleged delay, the "key Government actor" had died, making it impossible to hear his live testimony or for the Government to even depose him as to the plaintiff's claim for intentional infliction of emotional distress.

consisting of some 48,000 pages, the parties had taken extensive discovery including approximately 73 depositions (11 preserved by videotape), and production of tens of thousands of documents, 1,735 of which had been designated as exhibits for trial (692 Defense, 901 Plaintiffs, 142 Joint). This material is still preserved and available through either the Government or the Plaintiffs in the present case. (Wolf Affidavit, ¶ 8). Thus, the Government has failed to establish that the alleged delay has resulted in any prejudice.

**CONCLUSION**

Tolling limitations by the filing of a class action has been the law in federal courts generally for the past 30 years with the decision in *American Pipe* in 1974. *American Pipe* tolling has been the law in this Court for the past 16 years since the Court's opinion in *Barbieri* in 1988, reaffirmed in *Christian* just 4 years ago in 2000, and most recently in *Solow* and *Athey* in 2007. Statutory tolling in general (*see Wood-Ivey*), and *American Pipe* tolling in particular (*see Stone Container*), applies in class actions against the Government. There is simply no basis in substantive law, practice or procedure that commands or commends a different result in the present case.

The Government's motion for summary judgment on the affirmative defense of laches is procedurally defective and should be denied on that basis alone. Moreover, even if the Court considers the unsupported documents offered by the Government, they do not show that the Plaintiffs' decision to wait to file suit until the *Testwuide* litigation was resolved was either unreasonable or inexcusable, and there is no evidence of any prejudice to the Government. Therefore, the Government's request for summary judgment on its laches defense must be denied.

Respectfully submitted,

Date:January 4, 2008

s/Martin E. Wolf

Martin E. Wolf
Quinn, Gordon & Wolf, Chtd.
102 West Pennsylvania Avenue
Suite 402
Towson, MD 21204
(410) 825-2300
(410) 825-0066 fax
mwolf@quinnlaw.com

Attorney of Record for
Plaintiffs pursuant to
Rule 83.1(c)(1)

Of counsel:

Kieron F. Quinn
Quinn, Gordon & Wolf, Chtd.
102 W. PennsylvaniaAvenue
Suite 402
Towson, Maryland 21204
(410) 825-2300
kfquinn@quinnlaw.com

Charles R. Hofheimer
Jack E. Ferrebee
Kristen D. Hofheimer
Hofheimer/Ferrebee, P.C.
1060 Laskin Road, Suite 12-B
Virginia Beach, Virginia 23451
(757) 425-5200
chofheimer@hoflaw.com
jferrebee@hoflaw.com
khofheimer@hoflaw.com

Thomas Shuttleworth
Stephen C. Swain
Charles Lustig
Shuttleworth, Ruloff, Swain, Haddad & Morecock
4525 South Boulevard, Suite 300
Virginia Beach, Virginia 23452
(757) 671-6000
tshuttleworth@srgslaw.com
scswain@srgslaw.com
clustig@srgslaw.com