**UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| **THOMAS F. ABERNETHY., et al.** | ) | |
| | ) | |
| **Plaintiffs,** | ) | **No. 07-651L** |
| | ) | |
| **v.** | ) | |
| | ) | |
| **THE UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

**AFFIDAVIT OF MARTIN E. WOLF**

The Affiant, Martin E. Wolf, being duly sworn testifies as follows:

1. I am a member of the Bar of this Court, Counsel of Record for Plaintiffs in this case, over 21 years of age and otherwise fully-competent to testify to the matters set forth in this Affidavit.

**<u>The Testwuide Case</u>**

2. I am also one of the lawyers representing the Plaintiffs in nine related cases filed in this Court under the consolidated caption, *Testwuide v. United States*, Case No. 01-201L (collectively, "Testwuide"). A copy of the Docket Entry log in Testwuide, which I printed from the Court's PACER website on December 31, 2007, is attached as Exhibit 1 to this Affidavit.

3. The claims in Testwuide are virtually identical to the claims in the current case, and are based on the same transfer of F/A-18 aircraft from NAS Cecil Field to NAS Oceana in 1998 and 1999.

4. Testwuide was originally filed as a class action on April 5, 2001. (Doc. #1). A copy of the Testwuide Class Action Complaint for Inverse Condemnation is attached as Exhibit

2. The Complaint included two classes based on the subject properties' ownership and noise exposure:

> Class 1 – 80 + dB DNL
>
> Owners of all residential properties as of July, 1998, located in a noise zone of 80 or more dB DNL in the 1999 Noise Contours for NAS Oceana or NALF Fentress and in a noise zone of at least 5 dB DNL lower in the 1997 Noise Contours, both as established by Wyle Laboratories, Inc. in Report 97-10 dated February, 1998.
>
> Class 2 – 65-79 dB DNL
>
> Owners of all residential properties as of July, 1998, located in a noise zone of 65-79 dB DNL in the 1999 Noise Contours for NAS Oceana or NALF Fentress and in a noise zone of at least 5 dB DNL lower in the 1997 Noise Contours, both as established by Wyle Laboratories, Inc. in Report 97-10 dated February, 1998.

5. Under the then-current rules of procedure, the motion for class certification, supporting memorandum and exhibits, were filed with the Complaint. (Doc. #3). A copy of the motion with supporting memorandum and exhibits is attached as Exhibit 3. The Court denied class certification on June 17, 2003 (Doc. #71), because the Court believed that the class was not adequately defined. The Court acknowledged that its decision could have gone either way and took the extraordinary step of certifying the class certification decision for interlocutory appeal. A copy of the Court opinion denying class certification is attached as Exhibit 4. Plaintiffs petitioned the Federal Circuit to take the interlocutory appeal. Shortly thereafter, the Court of Appeals for the Federal Circuit denied the petition. (Doc. #74).

5. The Court lifted the stay in Testwuide on May 26, 2004. (Doc. #79). Shortly thereafter, on June 16, 2004, we filed a motion for leave to amend the Testwuide Complaint in order to add approximately 130 additional plaintiffs. (Doc. #80). These additional plaintiffs would have been members of the class had it been certified. In light of the denial of class

certification and the Federal Circuit's refusal to hear the interlocutory appeal, we needed to file individual claims for the owners of the more than 2,000 properties whom we represented.

6. The Court conducted several telephonic status conferences in June and July, during which we stated our intention to file a series of cases with 200-250 plaintiffs each until the claims of all property owners who we represented were filed. During those telephonic conferences, especially the conference held on July 20, 2004, the Government raised the statute of limitations as a defense that barred these potential lawsuits. At that point, there were two dates of takings in the various pleadings and motions that had been filed, July 1, 1998 and July 1, 1999. Six years from the 1998 date would have run by the time of the telephonic conference on July 20th. We presented to the Court the principle that limitations were tolled for the period from the filing of the class complaint until class certification was denied under *American Pipe v. Utah*, 414 U.S. 538 (1974). As a result of these discussions, the Court ordered the parties to file bench memoranda on *Am Pipe* tolling by September 9, 2004. Copy of Order dated July 29, 2004 attached as Exhibit 5.

7. On September 9, 2004, the parties submitted bench briefs setting forth extensively their respective positions on *Am Pipe* tolling and whether it was applicable in *Testwuide*. Plaintiffs included as an exhibit with their memorandum an Order redefining a class by the high noise zones on a noise contour map in an inverse condemnation case against the Memphis-Shelby County Airport Authority for the taking of an avigation easement (*Martha Alvarado, et al., v. Memphis-Shelby County Airport Auth.*, W.D. Tenn. Case No. 89-3001-HBRO, dated Sept. 8, 1998). Copies of both bench memoranda are attached as Exhibits 6 and 7 respectively. No decision, order or opinion was ever entered in Testwuide whether or not *Am Pipe* tolling applied in that case.

8. Testwuide was scheduled to begin trial of 12 test case properties on October 19, 2006. On October 17, 2006, the parties reached a tentative settlement and informed the Court, asking that the trial be continued to allow the parties to pursue final settlement. At the time of the tentative settlement, the parties had conducted extensive discovery, which included approximately 73 depositions (11 videotaped), and production of tens of thousands of documents. The parties had already submitted trial exhibit lists, consisting of 692 defense exhibits, 901 plaintiffs' exhibits, and 142 joint exhibits. In addition, Plaintiffs counsel had obtained the 48,000 page administrative record regarding the decision to transfer the jets to NAS Oceana, that was part of a prior lawsuit under the National Environmental Protection Act. Plaintiffs' counsel still has all these materials.

**<u>The Present Cases</u>**

9. The present case, and the companion putative class action styled, *Askins et al. v. United States*, Case No. 07-650 L, were filed on September 5, 2007. The lawyers representing the Plaintiffs in both cases are the same lawyers who represented the Plaintiffs in Testwuide. The owners of a total of 1,381 properties are named in the Complaints in both cases, 1,375 in the present case and 6 in *Askins*. The present case and *Askins* were filed with the same purpose as Testwuide and the subsequent cases consolidated with it. The putative class defined in the *Askins* Complaint includes as class members the owners of the 1,375 properties who are Plaintiffs in the present case. If *Askins* is certified to proceed as a class action, the claims of the Plaintiffs in the present case will be addressed on a representative basis in *Askins* and the present case can be stayed pending a final resolution of *Askins*. Only if *Askins* is not certified to proceed as a class action will it be necessary to take up the 1,375 individual claims in the present case.

10. Beginning in October 2006, the local Virginia Beach newspaper, the Virginian Pilot, publicized the tentative settlement of Testwuide. This was followed by several more periods of publicity as progress toward final settlement continued, culminating in July 2007 when the first settlement checks were distributed to property owners in Testwuide. With each round of publicity, property owners who were not named plaintiffs in the Testwuide case contacted Plaintiffs' counsel seeking representation to pursue their own claims. This culminated in July 2007 when literally thousands of property owners telephoned the offices of Plaintiffs' counsel and even appeared in person at their offices.

11. Plaintiffs' counsel began reviewing the claims of property owners who had contacted them. As part of this process, counsel investigated whether the property owners were part of the putative class in Testwuide, in which case limitations would have been tolled during the period from filing the Complaint in Testwuide, until the motion for class certification was denied. Counsel asserted that the date of taking for purposes of the present case was as early as July 1, 1999. Class certification was pending in Testwuide from April 5, 2001 until June 17, 2003. This period of two years, two months and 12 days, when added to the end of the six-year limitations period, extended the end of the limitations period, including tolling, to September 11, 2007.

12. Plaintiffs' counsel could only review a fraction of the thousands of property owners who sought to pursue their claims within the period remaining in which to file the complaints. Plaintiffs' counsel had to turn away at least hundreds, if not thousands of property owners as the September 11, 2007 deadline approached.

13. For each of the 1,381 properties whose owner's claims have been filed in the present case and *Askins*, counsel retained an expert in Geographical Information Systems (GIS)

to assist in determining the noise exposure based on the 1997 and 1999 Noise Contours, both as established by Wyle Laboratories, Inc. in Report 97-10 dated February, 1998.

14. Plaintiffs' counsel first determined from the land records of Virginia Beach or Chesapeake, as the case may be, if the person owned the subject property as of the date of taking, July 1, 1999. The information for those who did own their properties as of the date of taking were sent in batches to the GIS expert. He used the property information obtained from the cities of Virginia Beach and Chesapeake, overlayed with the noise contour data produced by the United States in discovery during Testwuide, to determine the noise exposure for each property as shown in the 1997 and 1999 noise contours. Of the 1,381 properties for whom counsel has filed suit, 1,301 readily identified. The remaining 80 required further research. Usually, this involved obtaining a more accurate street address or correcting transposed numbers or misspelled street names. For a very small number, Plaintiffs counsel located the property on a street map and visually compared the location to the AICUZ map published by the Department of the Navy. The end result is that each of the 1,381 properties was determined to be in a noise contour of 65 dB DNL or above for the 1999 contour, and to have been in a noise contour of at least 5 dB DNL less for the 1997 contour. This means that each of the 1,381 properties for whom suit ahs been filed in the present case or *Askins* was included in the Testwuide class definition and was a putative class member in Testwuide.

Date: January 4, 2008

Martin E. Wolf

STATE OF MARYLAND )
) to wit:
CITY/COUNTY OF Baltimore )

I HEREBY CERTIFY that on this 4th day of January, 2008, before me, the subscriber, a notary public of the State of Maryland, personally appeared MARTIN E. WOLF, and made affirmation in due form of law that the matters set forth in the foregoing Affidavit are true.

AS WITNESS my hand and notarial seal.

Darlene J. Sloat
Notary Public

My Commission Expires: 4/1/2010

DARLENE J. SLOAT
NOTARY PUBLIC
BALTIMORE COUNTY, MD