# IN THE UNITED STATES COURT OF FEDERAL CLAIMS

(E-Filed: January 25, 2008)

| | | |
|---|---|---|
| THOMAS F. ABERNETHY, et al., Plaintiffs, | ) | |
| v. | ) | No. 07-651 L<br>Honorable Victor J. Wolski |
| THE UNITED STATES OF AMERICA, Defendant. | ) | |

## DEFENDANT'S REPLY IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS OR, ALTERNATIVELY, FOR SUMMARY JUDGMENT

Respectfully submitted,

RONALD J. TENPAS
Assistant Attorney General
Environment & Natural Resources Division

STEVEN D. BRYANT
Environment & Natural Resources Division
United States Department of Justice
601 D Street, NW, Rm. 3205
Washington, D.C. 20004
202-305-0424
steven.bryant@usdoj.gov
Counsel for Defendant

Of Counsel:

ROBERT J. SMITH
Navy Litigation Office
Washington, D.C. 20374

Dated this 25th day of January, 2008

# TABLE OF CONTENTS


SUMMARY OF ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

I. 28 U.S. C. § 2501 Is Jurisdictional and Cannot Be Equitably Tolled . . . . . . . . . . . . . . . . 3

II. Applying "American Pipe Tolling" to 28 U.S.C. § 2501 Would Constitute Impermissible Equitable Tolling . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

III. The American Pipe Should Not Apply To Opt-In Class Action . . . . . . . . . . . . . . . . . . . . 9

IV. The Policy Considerations Underlying American Pipe are Not Present in the Case . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

V. Plaintiffs' Claims are Barred by the Doctrine of Laches . . . . . . . . . . . . . . . . . . . . . . . . . 16

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

# TABLE OF AUTHORITES

## CASES

A.C. Aukerman Co. v. R.L. Chaides Const. Co.
960 F.2d 1020 (Fed. Cir. 1992) (en banc) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

American Pipe & Construction Co. v. Utah
414 U.S. 538 (1974) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 5-6, 10, 12, 13, 14, 15

Barbieri v. United States
15 Cl. Ct. 747 (1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 13, 14

Barclay v. United States
351 F.Supp. 2d 1169 (D. Kan. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Basch v. Ground Round, Inc.
139 F.3d 6 (1st Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 26

Christian v United States
46 Fed. Cl. 793 (2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Citizens Concerned About Jet Noise v. Dalton
48 F. Supp. 2d 582 (E.D. Va. 1999), aff'd, 217 F.3d 838 (4th Cir. 2000) . . . . . . . . . . . 18

Crown, Cork & Seal Co. v. Parker
462 U.S. 345 (1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 13, 14, 16, 25

Grayson v. K Mart Corp.
79 F.3d 1086 (11th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Hohri v. United States
586 F.Supp. 769 (D.D.C. 1984), aff'd, 847 F.2d 779 (Fed. Cir.), cert. denied,
488 U.S. 925 (1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Hopland Band of Pomo Indians v. United States
855 F.2d 1573 (Fed. Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Irwin v. Department of Veterans Affairs,
498 U.S. 89 (1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 7

John R. Sand & Gravel Co. v. United States,
No. 06-1164, 2008 U.S. LEXIS 744 (U.S. Jan., 8, 2008) . . . . . . . . . . . . . . . . 2, 3, 4, 5, 14

Kendall v. United States
107 U.S. 123 (1883) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

LaChapelle v. Owens Illinois, Inc.
513 F.2d 286 (5th Cir. 1975), . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Land Grantors in Henderson, Union & Webster Counties v. United States,
No. 93-648 L, 2008 U.S. Claims LEXIS 6 (Braden, J., Jan., 10, 2008) . . . . . . . . . . . . . 14

Loengard v. Sante Fe Industries, Inc.
573 F.Supp. 1355 (S.D.N.Y. 1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Martinez v. United States
333 F.3d 1295 (Fed. Cir. 2003 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

McKowan Lowe & Co. v. Jasmine, Ltd.
295 F.3d 380 (3rd Cir. 2002), cert. denied, Arthur Anderson, LLP
v. Berger, 123 S. Ct. 691 (2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 14

O'Connell v. Chapion Int'l Corp.
812 F.2d 393 (8th Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Raitport v. United States
33 Fed. Cl. 155 (1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Solow v. United States
78 Fed. Cl. 86 (2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Soriano v. United States
352 U.S. 270 (1957) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 5

Stone Container Corp. v. United States
229 F.3d 1345 (Fed. Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6-8, 10

Testwuide v. United States
56 Fed. Cl. 755 n. 3 (2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9-15, 18

United States v. Brockamp
519 U.S. 347 (1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Wood-Ivey Sys. v. United States
4 F.3d 961 (Fed. Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

**STATUTES**

15 U.S.C. § 16(b) . . . . . 2
28 U.S.C. § 1497 . . . . . 9
28 U.S.C. § 2501 . . . . . 2-5, 8, 9, 14, 24
28 U.S.C. § 2503 (b) . . . . . 8
28 U.S.C. § 2636 . . . . . 7
28 U.S.C. § 2636 (i) . . . . . 6-8
29 U.S.C. § 216 . . . . . 11
41 U.S.C. § 609(a) . . . . . 8

**RULES**

RCFC 23 . . . . . 2, 8, 9

RCFC 6(a) . . . . . 8

## SUMMARY OF ARGUMENT

In our opening motion and supporting memorandum, we established that Plaintiffs' claims are barred by the six-year statute of limitations contained in 28 U.S.C. § 2501. In their opposition, Plaintiffs' acknowledge that more than eight years passed between the July 1999 alleged date of taking and the date of filing of the complaint, but claim that the statute of limitations was tolled during the pendency of their class action motion in Testwuide v. United States, No. 01-201L (Fed. Cl.). Plaintiffs rely primarily on American Pipe & Construction Co. v. Utah, 414 U.S. 538 (1974), a case dealing neither with the statute of limitations at issue in this case, 28 U.S.C. § 2501,[1] nor the class certification rule at issue in this case, Rule 23 of the Rules of the United States Court of Federal Claims ("RCFC"). Plaintiffs' argument is without merit. In John R. Sand & Gravel Co. v. United States, No. 06-1164, 2008 U.S. LEXIS 744 (U.S. Jan. 8, 2008) (hereinafter "John R. Sand"), the United States Supreme Court reaffirmed the absolute jurisdictional nature of Section 2501, precluding the application of equitable tolling to the statute. Consequently, Plaintiffs' claims must be dismissed.

Even if 28 U.S.C. § 2501 were subject to equitable tolling, it is not warranted in this case. As several Federal courts of appeal have found, there are sound reasons not to extend the policy of equitable tolling to opt-in class actions, the only class actions authorized by RCFC 23.

Moreover, there is no basis to toll the limitations period here as a result of the class certification proceedings in Testwuide in light of the fact that, after the motion for class certification was denied in Testwuide, more than two years remained before the limitations period expired in which Plaintiffs could have filed individual causes of action in this Court.

[1] Unlike 28 U.S.C. § 2501, the statute of limitations at issue in American Pipe included a built-in tolling period. See Id. at 541-42 (citing Clayton Act § 5(b), 38 Stat. 731, as amended, 15 U.S.C. § 16(b)).

Indeed, more than 3,400 plaintiffs did file their claims following the denial of class certification. Plaintiffs here chose to wait until after the limitations period expired and filed the instant complaint in an attempt to revive their time-barred claims. Tolling the limitations period in this situation is contrary to the policy that supported the Supreme Court decision in American Pipe in that allowing tolling in the present case would encourage plaintiffs to sit on their claims, the very concern expressed in American Pipe.

Alternatively, Defendant is entitled to summary judgment based on the doctrine of laches, because Plaintiffs' unreasonable eight-year delay has prejudiced the United States' ability to defend this case.

## ARGUMENT

### I. 28 U.S.C. § 2501 Is Jurisdictional And Cannot Be Equitably Tolled

This Court's statue of limitations, 28 U.S.C. § 2501, is jurisdictional, and therefore cannot be waived or equitably tolled. Hohri v. United States, 586 F.Supp. 769, 786 n. 22 (D.D.C. 1984), aff'd, 847 F.2d 779 (Fed. Cir.) (on the merits), cert. denied, 488 U.S. 925 (1988); see also Hopland Band of Pomo Indians v. United States, 855 F.2d 1573, 1576-77 (Fed. Cir. 1988). The Supreme Court recently analyzed Section 2501 and reaffirmed this principle in John R. Sand. The Supreme Court recognized that there are two types of statutes of limitations. The first type is designed to protect defendants against stale claims. Id. at *6. These statutes of limitations generally can be tolled based on equitable considerations. Id. If not affirmatively raised, these statutes of limitations may be waived. Id.

Conversely, the Supreme Court explained that the second category of statutes of limitations is designed for broader system-related purposes, rather than simply to protect a defendant against stale claims. Id. The Court noted that these statutes of limitations are

"jurisdictional" and their time limitations are more absolute. Id. at *7. They cannot be waived, and courts may not apply equitable considerations to extend them. Id. The Supreme Court held that Section 2501 belongs in this latter category of statutes of limitations.

In reaching its decision in John R. Sand, the Supreme Court surveyed its caselaw as far back as the 19th Century to demonstrate that Section 2501 is an absolute jurisdictional statute of limitations that cannot be equitably tolled. The Court began by underscoring its holding in Kendall v. United States, 107 U.S. 123 (1883). Id. at *7-8. There, the plaintiff filed a lawsuit approximately one year after the six-year statute of limitations expired. Id. The plaintiff sought to equitably toll the limitations period because he had not been able to file the lawsuit until Congress lifted a legal disability. Id. The Court held that the statute was not subject to equitable tolling:

> [T]he Court denied the request [for tolling] ... not because it thought the equities ran against the plaintiff, but because the statute (with certain listed exceptions) did not permit tolling ... the statute was jurisdictional ... it was not susceptible to judicial engrafting of unlisted disabilities such as sickness, surprise, or inevitable accident....

John R. Sand, supra, at *8 (internal citations omitted).

The Supreme Court also cited Soriano v. United States, 352 U.S. 270, 273-74 (1957), where the Court reiterated that the statute of limitations in the Court of Federal Claims is jurisdictionally limited:

> It has been settled since Kendall v. United States, 107 U.S. 123 (1883), that the Congress in creating the Court of Claims restricted that court's jurisdiction ... Congress in the Act creating the Court of Claims gave the Government's consent to be sued therein only in certain classes of claims and that no others might be asserted against it, including claims which are declared barred if not asserted within the time limited by the statute. As to the latter cases, jurisdiction was given only over those filed within six years after such claim first accrues, unless the claimant was under legal disability or beyond the seas at the time the claim accrues, in which event suit must be filed within three years after the disability

> ceases … The court cannot superadd [another disability] to those enumerated in [the statute].

Soriano, supra, at 273 (internal citations omitted).

The Court noted that the rebuttable presumption of equitable tolling applicable to suits against private defendants generally applies to suits against the United States as reflected in Irwin v. Department of Veterans Affairs, 498 U.S. 89 (1990). John R. Sand, supra, at *12. However, the Court explicitly held that Irwin does not apply to Section 2501. Id. at *11-12. Thus, the Court recognized that Section 2501 is "not susceptible to equitable tolling" given its jurisdictional nature. Id. at *11. Accordingly, within days of the Supreme Court's John R. Sand decision, one judge of this Court sua sponte dismissed a pending case recognizing that it cannot entertain equitable tolling considerations with respect to Section 2501: "[T]he United States Supreme Court clarified and definitively ruled that the statute of limitations governing claims filed, pursuant to 28 U.S.C. § 2501, is "absolute … forbidding a court to consider whether certain equitable considerations warrant extending a limitations period." Land Grantors in Henderson, Union & Webster Counties v. United States, No. 93-648L, 2008 U.S. Claims LEXIS 6 (Braden, J., Jan. 10, 2008) (internal quotations omitted). For the foregoing reasons, 28 U.S.C. § 2501 is an absolute jurisdictional statute of limitations, and is therefore not subject to equitable tolling.

## II. Applying "American Pipe Tolling" To 28 U.S.C. § 2501 Would Constitute Impermissible Equitable Tolling

In John R. Sand the Supreme Court made it clear that 28 U.S.C. § 2501 may not be equitably tolled. Applying "American Pipe tolling" to this case would do just that.[2] Plaintiffs

---

[2] Under American Pipe, the filing of a class action tolls "the applicable statute of limitations as to all asserted members of the class who would have been parties had the suit been permitted to continue as a class action." 414

erroneously claim that the American Pipe rule can toll Section 2501 without "involv[ing] issues of sovereign immunity or equitable tolling." Plts.' Opp'n. 12. Inexplicably, Plaintiffs rely on the United States Court of Appeals for the Federal Circuit's decision in Stone Container Corp. v. United States, 229 F.3d 1345 (Fed. Cir. 2000). As discussed below, the Stone Container decision clearly demonstrates that the use of American Pipe to toll Section 2501 would require this Court to ignore the Supreme Court's mandate that Section 2501 is jurisdictional and therefore not subject to equitable tolling.

In Stone Container, the plaintiffs sought recovery in the Court of International Trade ("CIT") of tax payments made to the federal government. 229 F.3d at 1348. The United States responded that plaintiffs' claims were time-barred because they were filed outside the two-year statute of limitations specified in 28 U.S.C. § 2636(i). Id. Although the Court of Appeals held that the American Pipe rule tolled 28 U.S.C. § 2636(i), its decision was predicated on the fact that Section 2636(i) expressly incorporated Rule 23 of the Rules of the Court of International Trade. Id. at 1353-54. Consequently, the American Pipe tolling with respect to Section 2636(i) was statutory rather than judge-made equitable tolling. Id. at 1354.

The Court of Appeals in Stone Container explained that American Pipe tolling originated with the Supreme Court's interpretation of Rule 23 of the Federal Rules of Civil Procedure ("Fed. R. Civ. P."). Id. at 1354. The Federal Rules of Civil Procedure have the same force and effect as federal statutes because they are approved by Congress; therefore, American Pipe tolling is statutory tolling. Id. The Court of Appeals then distinguished the CIT's rules,

---

U.S. 538, 554 (1974). If class certification is denied, the American Pipe rule, as extended by Crown, Cork & Seal Co. v. Parker, 462 U.S. 345 (1983), allows the class members – now without a class action and whose claims would otherwise be time-barred – to make a timely motion to intervene or to pursue an individual claim by filing a new complaint.

explaining that they are not approved by Congress in the same manner as the Federal Rules of Civil Procedure. Id. However, as the Court of Appeals discussed, the CIT's statute of limitations, 28 U.S.C. § 2636, explicitly incorporates the CIT's rules: an action is time-barred "unless commenced in accordance with the rules of the court within two years after the cause of action first accrues." Id. quoting (28 U.S.C. § 2636(i) (emphasis in original)). Because the statute of limitations expressly includes the CIT's rules, the Court of Appeals held that CIT Rule 23 statutorily tolls the limitations period, just as Fed. R. Civ. P. 23. Id.

The Court of Appeals emphasized the distinction between statutory tolling and judge-made equitable tolling. Had the Court of Appeals not found that CIT Rule 23 involved statutory tolling, then it would have been forced to evaluate whether the American Pipe rule would have applied under equitable tolling principles: "Here, however, we need not decide the difficult question concerning the scope of judge-made equitable tolling doctrines because the tolling here is mandated by [the CIT] statute." Stone Container, supra, at 1353.

Indeed, the Court of Appeals began analyzing whether American Pipe tolled the CIT's statute of limitations by first noting that a statute of limitations is "a condition on the waiver of sovereign immunity [and courts] may not extend the waiver beyond that which Congress intended." Id. at 1352 (internal citations omitted). The Court of Appeals followed with a detailed discussion of Supreme Court precedent on equitable tolling against the government. Id. at 1352-53. "The Supreme Court's decisions do not speak with great clarity on the subject of equitable tolling against the government." Id. at 1352. The Court analyzed Irwin v. Dept. of Veterans Affairs, supra, where the rebuttable presumption of equitable tolling against the United States originated. Id. The Court of Appeals then noted that in United States v. Brockamp, 519 U.S. 347 (1997), the Supreme Court stepped back from applying a general rule of equitable

tolling against the government. Stone Container, supra, at 1353. The Court of Appeals acknowledged that it "has previously struggled to reconcile Irwin and Brockamp in connection with other statutes." Id.

The Court of Appeals' thorough discussion of statutory and equitable tolling in Stone Container, which was prefaced by an acknowledgment that statutes of limitations are a condition on the waiver of sovereign immunity, provides the analytical framework for determining whether American Pipe tolling applies to Section 2501.[3] Starting with the latter, the Supreme Court's John R. Sand decision discussed above has definitively answered the previously "difficult question" concerning judge-made equitable tolling – equitable tolling does not apply to Section 2501.

Statutory tolling is likewise inapplicable. First, the Rules for the Court of Federal Claims are not transmitted to Congress for approval; therefore, unlike the Federal Rules of Civil Procedure, they are not statutory. See 28 U.S.C. § 2503(b). Second, in contrast to the CIT's statute of limitations discussed in Stone Container, 28 U.S.C. § 2501 does not expressly incorporate Rule 23 of the Court of Federal Claims. Indeed, there is no mention of the rules generally, or RCFC 23 specifically. Instead, Section 2501 mandates the general six-year time limitation and specifies two narrow exceptions that toll the time period, neither of which applies

[3] This analytical approach by the Court of Appeals demonstrates that Plaintiffs' reliance on Wood-Ivey Sys. v. United States, 4 F.3d 961 (Fed. Cir. 1993), is misplaced. First, the Court would not have begun its American Pipe analysis in Stone Container by explicitly noting that statutes of limitation are a condition of sovereign immunity and follow it with a lengthy discussion of equitable tolling, had the Court agreed with Plaintiffs' contention that American Pipe tolling does not "involve issues of sovereign immunity and equitable tolling." Second, Wood-Ivey concerned the timeliness of a filing made on the first business day after a weekend or holiday as provided in RCFC 6(a), not tolling during the pendency of a motion for class certification. 4 F.3d at 962. Third, the Wood-Ivey decision was predicated on applying equitable considerations of "liberality and leniency" that cannot be read into 28 U.S.C. § 2501 in light of John R. Sand. Wood-Ivey, 4 F.3d at 962. In addition, for clarification purposes, Plaintiffs misstated the statute of limitations in Wood-Ivey. The Contract Disputes Act of 1978 provides for a one-year statute of limitations under 41 U.S.C. § 609(a), rather than the six years Plaintiffs erroneously asserted. Wood-Ivey, 4 F.3d at 962; Pls.' Br. at 11.

here.[4] Congress did not include class action tolling in Section 2501, and applying it here would amount to the judicial engrafting that is specifically prohibited by 124 years of Supreme Court precedent from Kendall to John R. Sand. Consequently, American Pipe tolling cannot be applied to 28 U.S.C. § 2501.

## III. American Pipe Should Not Apply To Opt-In Class Actions

We have demonstrated that Section 2501 is not subject to equitable tolling and that RCFC 23 is not statutory, which mandates dismissal of Plaintiffs' claims. Even assuming, arguendo, that American Pipe tolling could be applied to Section 2501, it is not appropriate to do so in light of the differences between opt-in and opt-out class actions. Fed. R. Civ. P. 23 provides exclusively for opt-out class actions, whereas the Rules of this Court only authorize opt-in class actions. RCFC 23. Testwuide v. United States, 56 Fed. Cl. 755 n. 3 (2003). As discussed below, there are sound reasons why American Pipe tolling should not be applied to opt-in class actions.

The Supreme Court discussed this distinction in American Pipe, noting that the old Fed. R. Civ. P. 23 provided for both opt-in class actions (also known as "spurious" class actions) and opt-out class actions. American Pipe, supra, 414 U.S. at 545-46. The Court observed that because an opt-in class action is essentially a device to permit individual joinder or intervention, under the old Rule several courts of appeal had determined that each individual participating in an opt-in class would have to satisfy the timeliness requirement. Id. at 549-50. Other courts of appeal held that the filing of the class action complaint tolled the statute of limitations as to all

---

[4] (1) claims under 28 U.S.C. § 1497 must be filed within two years after the termination of the river and harbors improvement operations on which the claims is based; and (2) the statute of limitations is tolled for a person under legal disability or beyond the seas until three years after the disability terminates. 28 U.S.C. § 2501.

putative plaintiffs. Id.

The Supreme Court observed that the conflict within the circuits had never been resolved but that by only allowing opt-out classes, the new Fed. R. Civ. P. 23 eliminated the concerns associated with tolling the statute of limitations for spurious classes. To date, there remains a split among the circuits concerning whether the American Pipe tolling rule applies to spurious or opt-out class actions. The Court of Appeals for the Federal Circuit recognized this continuing conflict in Stone Container, supra, 229 F.3d at 1356 n.6 but did not address the question.[5] Other circuits have confronted the issue.

In Grayson v. K Mart Corp., 79 F.3d 1086 (11th Cir. 1996), the Court of Appeals for the Eleventh Circuit concluded that tolling did not apply to plaintiffs suing under the Age Discrimination in Employment Act ("ADEA") which provides for opt-in joinder. The court held that opt-in plaintiffs should be deemed to commence their civil action only when they file their written consent to opt into the class action. See also O'Connell v. Chapion Int'l Corp., 812 F.2d 393, 394 (8th Cir. 1987). The court determined that the adoption of opt-in procedures represented an implicit rejection of the Rule 23 class action procedures including the tolling of putative class members' claims by the filing of the class complaint. It cited LaChapelle v. Owens Illinois, Inc., 513 F.2d 286, 289 (5th Cir. 1975), for support. There, the Fifth Circuit recognized a "fundamental, irreconcilable difference between" opt-in classes under the Fair

[5] In Barbieri v. United States, 15 Cl. Ct. 747 (1988), Judge Wiese acknowledged that the rationale for excluding American Pipe tolling from opt-in cases was "not without persuasive force … and reflects the reasoning endorsed by some courts…." Id. at 750. However, the court elected to treat the initiation of an opt-in class action as a representative action, and therefore one which tolls the statute of limitations for all members of the class based on equitable considerations and past practice: 1) "litigants should not have to think twice about whether the commencement of a class suit in the Claims Court carries with it substantive connotations that stand at odds with similar litigation brought in the district courts" and 2) that consistent with historical practice, "concern for the avoidance of a multiplicity of actions led courts of equity to permit a single litigant … to sue in behalf of others similarly situated." Id. at 750-51. Additionally, Barbieri is not controlling precedent because it conflicts with the Supreme Court's decision in John R Sand.

Labor Standards Act (29 U.S.C § 216) and opt-out classes under Fed. R. Civ. P. 23:

> In a Rule 23 proceeding ... each person within the [class] description is considered to be a class member and, as such, is bound by the judgment, whether favorable or unfavorable, unless he has opted out of the suit. Under § 16(B) of FLSA, on the other hand, no person can become a party plaintiff and no person will be bound by or may benefit from judgment unless he has affirmatively opted into the class.

Id. at 288.

In an opt-out class, unless a putative class member acts to exclude himself from the lawsuit, he is bound by a ruling even if he knows nothing about the case. Since putative class members are not required to do anything to ensure that they will be bound by the outcome, it makes little sense to require them to do something to ensure that they will not be excluded by the statute of limitations.

By contrast, in an opt-in lawsuit, a class member must affirmatively act in order to be included in the judgment. Inasmuch as they must make an individual affirmative decision at some point in order to be included, much like they would for joinder or intervention, it is no imposition to require them to take action and make this decision within the statute of limitations period. The alternative would permit the old, feared abuse of putative plaintiffs waiting to see the outcome of the lawsuit before deciding whether to join or not:

> A recurrent source of abuse under the former Rule [23] lay in the potential that members of the claimed class could in some situations await developments in the trial or even final judgment on the merits in order to determine whether participation would be favorable to their interests. If the evidence at the trial made their prospective positions as actual class members appear weak, or if a judgment precluded the possibility of a favorable determination, such putative members of the class who chose not to intervene or join as parties would not be bound by the judgment. This situation – the potential for so-called one way intervention – aroused considerable criticism upon the ground that it was unfair to allow members of a class to benefit from a favorable judgment without subjecting themselves to the binding effect of an unfavorable one.

American Pipe, supra, 414 U.S. at 546 (internal quotations omitted).

Notwithstanding the denial of class certification in Testwuide, the Supreme Court's concern with "having it both ways" in opt-in class actions is equally applicable here. Plaintiffs sat on their claims since the alleged date of taking in July 1999 while approximately 3,400 other residents in Virginia Beach and Chesapeake, Virginia, prosecuted their claims within the statute of limitations. Only after the consolidated Testwuide litigation was nearing resolution through settlement did these Plaintiffs bring suit. This dilatory piecemeal approach to litigation should not be countenanced. For the reasons above, equitable tolling should not apply to opt-in proceedings such as those in the Court of Federal Claims.

## IV. The Policy Considerations Underlying American Pipe Are Not Present In This Case

Moreover, the promotion of judicial efficiency and economy that is the policy underlying American Pipe tolling is not present in this case. The purpose of the American Pipe rule is to protect the claims of potential class members whose claims would become time-barred during the pendency of a motion for class certification or immediately thereafter so that they would not be required to file motions to intervene or additional lawsuits with similar claims when the applicable statute of limitations was set to expire. This purpose is not served in the present case, because more than two years remained on the original statute of limitations after class certification was denied. In fact, applying American Pipe tolling here would hinder judicial efficiency. It would reward litigants who sat on their claims while similar claims proceeded and were resolved.

The tolling rule articulated in American Pipe reflects a balancing of the purpose of a statute of limitations with the application of Fed. R. Civ. P. 23 to achieve "the efficiency and economy of litigation," which is "a principal purpose" of a class action. American Pipe, 414

U.S. at 553. As subsequently explained by the Supreme Court in Crown, Cork & Seal Co. v. Parker, 462 U.S. 345 (1983):

> The Court reasoned that unless the filing of a class action tolled the statute of limitations, potential class members would be induced to file motions to intervene or to join in order to protect themselves against the possibility that certification would be denied. The principal purposes of the class action procedure – promotion of efficiency and economy of litigation – would thereby be frustrated. . . . To protect the policies behind the class action procedure, the Court held that the commencement of a class action suspends the applicable statute of limitations as to all asserted members of the class who would have been parties had the suit been permitted to continue as a class action.

Crown, Cork, 462 U.S. at 349 (internal citations to American Pipe omitted).

American Pipe and its progeny involve facts in which the applicable limitations period would have expired before the court's decision on class certification unless the statute of limitations was tolled. The class action at issue in American Pipe was filed 11 days before the applicable statute of limitations was due to expire. 414 U.S. at 541. Similarly, the class action in Barbieri v. United States, 15 Cl. Ct. 747, 751 (1988), was filed "[i]n the waning months of the limitations period" and the claims filed just two months after this earlier class certification was denied were "clearly time-barred" unless the limitations period was tolled under American Pipe. 15 Cl. Ct. at 749. See also Solow v. United States, 78 Fed. Cl. 86 (2007) (equitably tolled statute of limitations for non-settling members of class action whose claims would have been time-barred when settlement was completed); Christian v United States, 46 Fed. Cl. 793, 815-18 (2000) (certifying a class action and treating a motion for intervention, which was filed in order to protect a claimant's rights from being time-barred if the class was not certified, as a motion to join the opt-in class); McKowan Lowe & Co. v. Jasmine, Ltd., 295 F.3d 380, 383, 389 (3rd Cir. 2002) (applying American Pipe to toll the statute of limitations applicable to the intervenors'

claims where that statute otherwise would have run during the pendency of the proposed class action), cert. denied, Arthur Anderson, LLP v. Berger, 123 S. Ct. 691 (2002).

Under these circumstances, tolling the statute of limitations during the pendency of the earlier filed class action protected the policies behind the class action procedure because, in the absence of tolling, the "potential class members . . . 'would be induced to file protective motions to intervene or to join in the event that a class was later found unsuitable.'" Barbieri v. United States, 15 Cl. Ct. 747, 751 (1988) (quoting American Pipe, 414 U.S. at 553); see also Crown, Cork, 462 U.S. at 350-51 ("A putative class member who fears that class certification may be denied would have every incentive to file a separate action prior to the expiration of his own period of limitations"). If potential class members were required to take such affirmative action in order to preserve their claims from becoming time-barred before a decision as to whether the class will be certified is made, "the utility of the class action device would be largely undermined – a result totally at odds with the essential thrust of the American Pipe decision." Barbieri, 15 Cl. Ct. at 751.

Plaintiffs refer to two district court decisions where American Pipe tolling was applied even though time remained on the original statute of limitations after class certification was denied.[6] In Loengard v. Sante Fe Industries, Inc., 573 F.Supp. 1355, 1360-61 (S.D.N.Y. 1983), approximately 13 months of the original statute of limitations remained after class certification was denied. That case is not helpful to the question of whether the policy considerations underlying American Pipe are served by tolling the statute of limitations in the present case. First, it appears that the district court did not consider whether the policy considerations

[6] These two cases of course did not concern 28 U.S.C. §2501, which the Supreme Court has found to not be capable of equitable tolling. See John R. Sand discussion supra, at 3-4.

underlying American Pipe were served in that case. The disagreement between the parties was limited to determining the applicable statute of limitations, not the rationale for the American Pipe decision. Id. at 1357-59. Defendants argued for a three-year statute of limitations, which would have expired during the pendency of the request for class certification. Id. The court, however, agreed with Plaintiffs that a six-year statute of limitations based on fraud should apply. Id. After class certification was denied, 13 months remained on the six-year statute of limitations. There is no indication that defendants argued that the American Pipe rule should not be applied under those circumstances, and it was not addressed in the decision.

Second, in contrast to the case at bar, Loengard involved New York state law and involved private litigants. Thus, federal sovereign immunity was not implicated, and therefore, no requirement to strictly construe the statutes of limitations as is required in this case.

Plaintiffs also cite to Barclay v. United States, 351 F.Supp. 2d 1169 (D. Kan. 2004). There the district court found that plaintiffs should enjoy the benefit of American Pipe tolling despite having time to file their claims under the original statute of limitations after class certification was denied. Defendant disagrees with that court's extension of the tolling rule to a situation in which the policy considerations underpinning American Pipe were not present. It is those policy considerations and the Supreme Court's analysis in American Pipe that should control a court's decision. As discussed below, applying the rule here undermines the very goals on which American Pipe was based; therefore, American Pipe should not be applied.

The policy considerations and facts that gave rise to and supported the application of tolling principles in American Pipe are absent in this case. Unlike the statute of limitations in American Pipe, the limitations period in this case did not expire before the date class certification was denied. To the contrary, Plaintiffs were afforded this Court's "generous six-year limitations

period," over two years of which remained after the denial of class certification in Testwuide. See Martinez v. United States, 333 F.3d 1295, 1310 (Fed. Cir. 2003). The potential class members had ample opportunity to file their complaint after class certification was denied, and thousands of them did file claims related to the relocation of the aircraft squadrons from NAS Cecil Field to NAS Oceana.

Accordingly, unlike the situation presented in American Pipe, this case does not involve individual claims which would have been time-barred before the class certification was denied but for the tolling rule. Moreover, because such a substantial amount of the six-year limitations period remained after the Court denied class certification (over two years), Plaintiffs were not faced with a situation that required them to intervene or file individual suits "to ensure that their rights would not be lost in the event class certification was denied." Crown, Cork, 462 U.S. at 350. Indeed, approximately 3,400 plaintiffs chose to file their claims as one of the eight cases filed after the denial of class certification. Plaintiffs in the present case elected to wait until after the limitations period expired to file their duplicative complaint in this Court. Providing Plaintiffs with an additional two years and 73 days (the period in which the class certification motion was pending) to file their complaint would not serve the principles the Supreme Court outlined in American Pipe. Instead, it would discourage plaintiffs from filing within the limitations period and persuade plaintiffs to wait until after the previous proceedings neared conclusion and then engage in procedural manipulation to revive time-barred claims. This is the antithesis of the rationale underlying American Pipe tolling – judicial efficiency and economy. As the First Circuit stated in Basch v. Ground Round, Inc., 139 F.3d 6, 12 (1st Cir. 1998), "[T]his simply cannot be what the American Pipe rule was intended to allow."

## V. Plaintiffs' Claims Are Barred By The Doctrine of Laches

Even assuming, arguendo, American Pipe tolling could be applied to this case, this Court should grant Defendant summary judgment on the grounds of laches. Laches is "the neglect or delay in bringing suit to remedy an alleged wrong, which taken together with lapse of time and other circumstances, causes prejudice to the adverse party and operates as an equitable bar [to suit]." Raitport v. United States, 33 Fed. Cl. 155, 159 (1995), quoting A.C. Aukerman Co. v. R.L. Chaides Const. Co., 960 F.2d 1020, 1028-29 (Fed. Cir. 1992) (en banc). As discussed in our opening motion, laches is within the sound discretion of the trial court and is appropriate in this case. Raitport v. United States, 33 Fed. Cl. at 159; A.C. Aukerman v. R.L. Chaides, 960 F.2d at 1032.

Plaintiffs assert that a rebuttable presumption of laches should not be applied because this is not a patent infringement case. Pls.' Br. at 19-20. However, regardless of whether this Court applies a rebuttable presumption, proving the affirmative defense of laches ultimately rests with defendant. Raitport v. United States, 33 Fed. Cl. 155, 159 (1995), quoting A.C. Aukerman Co. v. R.L. Chaides Const. Co., 960 F.2d 1020, 1028-29 (Fed. Cir. 1992) (en banc). Given the unique circumstances of this case, a rebuttable presumption of laches should be applied. Specifically, Plaintiffs' lengthy eight-year delay, which far exceeds the six-year statute of limitations for pre-filing damages in patent cases, in pursuing their claims is particularly unreasonable in light of the ongoing Testwuide litigation where virtually identically claims were alleged.

It is clear that Plaintiffs' delay was unreasonable and inexcusable. In our opening memorandum, Defendant attached a sampling of Virginian Pilot newspaper articles concerning the Testwuide litigation, website pages from the Jet Noise Litigation Group and the local group

Citizens Concerned About Jet Noise ("CCAJN"), brochures advocating the overflight takings litigation, and the deposition testimony of a purported class representative to its opening motion to show that the Virginia Beach and Chesapeake communities were saturated with information regarding the overflight takings litigation. Inexplicably, Plaintiffs contend that this documentary evidence is insufficient to "impute knowledge" to Plaintiffs of their claims, absent evidence demonstrating the level of dissemination of the documents or Plaintiffs' access to computers. Pl.s' Br. 22.[7] This assertion strains credulity. Even putting aside the media coverage, the prior CCAJN lawsuit,[8] and the Jet Noise Litigation Group advertising campaign, the allegations in Plaintiffs' Complaint demonstrate both that they were aware of their claims and were unreasonable in waiting eight years to assert them.

In their Complaint, Plaintiffs acknowledge that the F/A-18 C/D Hornet squadrons began arriving at NAS Oceana in December 1998. Compl. ¶ 14. Plaintiffs claim that the Hornets are significantly louder than earlier aircraft at NAS Oceana and NALF Fentress and that flights "dramatically increased" after the Hornets arrived. Compl. ¶ 16. Plaintiffs further claim that these allegedly "frequent and persistent" F/A-18 C/D flights were "directly over and in close proximity" to their properties and "substantially interfered with the use and enjoyment of Plaintiffs' properties." Compl. ¶ 17. Despite allegedly experiencing these inconveniences for more than eight years, Plaintiffs chose to sit on their potential claims.

Plaintiffs' counsel's affidavit, which was submitted with their Opposition brief, shows not that the Plaintiffs were unaware of their claims until September 2007, but that they chose not

---

[7] In the event that the instant motion is denied, Defendant respectfully reserves the right to depose Plaintiffs as to their knowledge of the Testwuide litigation.
[8] Citizens Concerned About Jet Noise v. Dalton, 48 F. Supp. 2d 582 (E.D. Va. 1999), aff'd, 217 F.3d 838 (4th Cir. 2000).

to bring them – that they sat on those claims – until after it appeared the original Testwuide case was going to settle. See Affidavit of Martin E. Wolf ("Wolf Affidavit") ¶ 10. Mr. Wolf acknowledges that the local Virginia Beach newspaper – the Virginian Pilot – publicized the Testwuide tentative settlement which resulted in the postponement of trial. Wolf Affidavit ¶ 10. "[S]everal more periods of publicity [followed] as progress toward the final settlement continued." Wolf Affidavit ¶ 10. Mr. Wolf further asserts that residents who had not asserted their claims in the previous approximately eight years then came forward, "culminat[ing] in July 2007 when the first settlement checks were distributed." Wolf Affidavit ¶ 10. Thus, it is apparent that Plaintiffs simply sat on their claims, waiting for the outcome of the prior litigation.[9] Based on the foregoing, it is clear that Plaintiffs' delay in bringing their claims was unreasonable.

Plaintiffs' long and inexcusable delay in pursuing claims has prejudiced Defendant's ability to defend this case. Three critical witnesses retired from military service shortly before the Testwuide trial, Captain Thomas F. Keeley, Captain Mark Benson, and Captain Mark Clemente. It is far from clear whether they will be available to assist in further litigation. Further, gaining access to other relevant military witnesses may be extremely difficult, given the nature of a military service and the current global demands. Finally, even assuming relevant witnesses can be secured, Plaintiffs' claims are more than eight years old and it is likely that the passage of time will have dulled memories.

---

[9] Further, it is clear from Mr. Wolf's description of the response to the publicity of the settlement that the Virginian Pilot effectively informed the community of the consolidated Testwuide litigation, despite Plaintiffs' claims to the contrary.

In sum, even putting aside the statute of limitations, Plaintiffs' claims should be barred by laches, considering the prejudice Defendant has suffered as a result of Plaintiffs' unreasonable eight-year delay in filing their Complaint based on an alleged July 1999 overflight taking.

## CONCLUSION

For the foregoing reasons, Defendant respectfully requests the Court grant its Motion to Dismiss, or Alternatively, for Summary Judgment.

Dated this 25th day of January, 2008

Respectfully submitted,

RONALD J. TENPAS
Assistant Attorney General
Environment & Natural Resources Division

s// Steven D. Bryant
STEVEN D. BRYANT
Environment & Natural Resources Division
United States Department of Justice
601 D Street, NW, Rm. 3205
Washington, D.C. 20004
202-305-0424
steven.bryant@usdoj.gov
Counsel for Defendant

Of Counsel:

ROBERT J. SMITH
Navy Litigation Office
Washington, D.C. 20374